Argued and submitted July 23, affirmed September 29, 1980

In the Matter of the Estate of
Grace Swenson, Deceased.

TROYER, et al,
*Respondents,*
*v.*
PLACKETT,
*Appellant.*

(No. 128786, CA No. 16071)

617 P2d 305

Robert J. Riecke, Philomath, argued the cause and filed the briefs for appellant.

Robert D. Dayton, Portland, argued the cause for respondents. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, and Ridgway K. Foley, Jr., Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

This is a proceeding to contest the will of Grace Swenson brought by Jane Troyer and Urinda Laura Lee "Betty" Russell, daughters of the deceased. They contend that decedent lacked testamentary capacity and that the will was the product of undue influence exerted by the sole beneficiary, Cora Plackett.

The will was admitted to probate on March 20, 1978. Contestants filed objections to probate on July 20, 1978. After a hearing on those objections on July 23, 24 and 25, 1979, the trial court, on September 24, 1979, issued a letter opinion finding that at the time of the execution of the will decedent lacked testamentary capacity and, further, that the will was the result of the undue influence of Cora Plackett. By order entered October 12, 1979, the court made formal findings in accordance with its letter opinion, sustained the objections to probate, declared the will null and void, decreed the order admitting the will to probate set aside and revoked the appointment of Cora Plackett as personal representative of the estate of Grace Swenson. Cora Plackett appeals this order. Our review is de novo. We affirm the trial court, finding that the will of Grace Swenson dated July 21, 1977, was the product of undue influence of Cora Plackett.

We abstain from the usual lengthy recitation of the facts in this type of case. We will recite facts in our discussion of the issue of undue influence which control our decision.

In *In Re Reddaway's Estate,* 214 Or 410, 419-20, 329 P2d 886 (1958), the Supreme Court said:

> "Definitions of undue influence couched in terms of the testator's freedom of will are subject to criticism in that they invite us to think in terms of coercion and duress, when the emphasis should be on the unfairness of the advantage which is reaped as the result of wrongful conduct. 'Undue influence does not negative consent by the donor. Equity acts because there is want of conscience on the part of the donee, not want of consent on the part of the donor.' 3

Modern L.Rev. 97, 100 (1939). Said in another way, undue influence has a closer kinship to fraud than to duress. It has been characterized as a 'species of fraud.'"

█ The burden of proving undue influence is upon the contestants. *In Re Southman's Estate,* 178 Or 462, 168 P2d 572 (1946). A confidential relationship between the testator and a beneficiary, considered together with other suspicious circumstances, may require the beneficiary to carry the burden of proof and present evidence to overcome the adverse inference of undue influence. *In Re Reddaway's Estate, supra; In Re Southman's Estate, supra;* and *Carlton v. Wolf,* 21 Or App 476, 535 P2d 119 (1975). Cora Plackett bore a confidential relationship to decedent. She was decedent's "friend"; she bathed decedent, gave her drugs, shopped for her, wrote her checks and transported her.

█ The factors to be considered in determining whether undue influence is exercised were set out by the Supreme Court in *In Re Reddaway's Estate, supra,* and reiterated by this court in *Carlton v. Wolf, supra.*

The first of these factors is procurement, that is, participation of the beneficiary in the preparation of the will. Cora Plackett, after learning that decedent intended to disinherit both her daughters and shortly after being told by decedent that decedent was thinking of leaving her entire estate to her, urged decedent to make a new will. She gave decedent the phone book, made the phone call to the attorney for her, talked to the attorney at the time of his first conference with the decedent and escorted the decedent to the attorney's office for purposes of execution of the will on July 21, 1977. (It is also at least interesting to note that Cora Plackett did not list that date in her diary as one of the days on which she worked for decedent.)

█ The second factor is independent advice. A beneficiary who participates in preparation of a will and occupies a confidential relationship to the testator has a duty to see that the testator receives independent, disinterested advice. *In Re Reddaway's Estate, supra; In Re Estate of Manillus Day,* 198 Or 518, 257

P2d 609 (1953). Cora Plackett did not seek to have decedent call either Mr. Hammond or Mr. Herbrand, attorneys, each of whom had drawn a will for decedent within ten months immediately preceding the drawing of this will. Instead, she helped the decedent contact a lawyer unknown to decedent. The attorney chosen had been in the practice of law less than two years and he relied in part on misinformation provided him by either decedent or Cora Plackett. The record discloses that he acted as little more than a scrivener. No effort was made by Cora Plackett to communicate with either of decedent's daughters, with other relatives or friends of the decedent, with doctors or with representatives of social agencies serving decedent to secure independent advice.

The third factor is secrecy and haste. No notice was given to the decedent's family members, close friends, or social service personnel. Decedent's true condition was kept from her daughter, Jane Troyer, when she made inquiry of her mother's condition on June 27, 1977, after a cousin, who had visited decedent for a week, phoned Jane telling her that her mother needed help, was being taken advantage of, and was on "dope." The services of an attorney who did not know decedent were sought, rather than those of attorneys to whom she was known. Cora Plackett urged the decedent to change her will and acted to assist her in changing her will within a week after Cora Plackett learned from decedent that decedent was considering making her her sole beneficiary.

The fourth factor is change in attitude toward others. Decedent had made two wills in the ten months prior to making this will. In September, 1976, she made a will leaving her entire estate to her two daughters to be shared equally. In February, 1977, by a second will, she left her entire estate to both daughters, with one receiving but $5 and the residue going to the other. Though Cora Plackett testified that she did not seek to have decedent leave her entire estate to her, the record is also entirely void of any effort by her to urge upon decedent any reconciliation with her daughter, Jane Troyer, from whom she had become

estranged. Jane Troyer was a friend of Cora Plackett's sister and had engaged Cora Plackett's services for the decedent.

The fifth factor is a change in the decedent's plan of disposing of her property. The two prior wills left decedent's entire estate to her daughters. This will disinherited them and gave the estate to a virtual stranger.

The sixth factor is that of an unnatural or unjust gift. The decedent disowned her two daughters, the natural subject of her bounty, and gave her entire estate to an acquaintance of less than two months duration. Decedent's original contact with the lawyer who drew the will was made only 33 days after Cora Plackett entered her home.

The seventh and final factor is susceptibility to influence. Decedent was physically sick, suffering from numerous ailments and injuries. She was unable to walk without help. She could not drive an automobile. She was dependent upon drugs and frequently used alcohol to excess. She had recently lost her husband of 40 years. She mistakenly accused one of her daughters of stealing her property. Her susceptibility to being taken advantage of was amply demonstrated by her dealings with a husband and wife, realtors, who befriended her and then took advantage of her in a series of transactions.

There are substantial conflicts in the testimony in this case. It is apparent from the record and the trial judge's decision that he did not accept the testimony of Cora Plackett as credible. As we have often stated, we give substantial weight to the findings of the trier of fact who saw and observed the witnesses.

■ We are satisfied from this record that Cora Plackett, the beneficiary of the July 21, 1977 will of Grace Swenson, exerted undue influence in the making of that will. Because we decide the case favorably

to contestants on this issue, we. do not address the question of the decedent's testamentary capacity. The judgment of the trial court is affirmed.