**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, Plaintiff,**

v.

**Gloria G. MEHLBRECH; Todd David Mehlbrech; and Lois Ann Jubb, Defendants.**

**Civ. No. 93–1318–FR.**

United States District Court, D. Oregon.

March 3, 1995.

---

Frank H. Lagesen, Christine B. Miller, Cosgrave, Vergeer & Kester, Portland, OR, for plaintiff.

Robert E. Valdez, Robert E. Valdez, P.C., San Antonio, TX, Andrea J. Anderly, Hutchinson, Hammond, Walsh, Herndon & Darling, West Linn, OR, for defendant Gloria E. Mehlbrech.

Phillip R. Muir, Muir & Troutman, Portland, OR, for defendants Todd David Mehlbrech and Lois Ann Jubb.

### OPINION

FRYE, District Judge:

The matter before the court is the motion of defendants Todd David Mehlbrech and Lois Ann Jubb for summary judgment (# 39).

### BACKGROUND

On November 22, 1994, this court granted the motions of the plaintiff, Prudential Insurance Company of America, for interpleader and for summary judgment on the counterclaim of defendant Gloria G. Mehlbrech for breach of contract. The remaining parties in this case, Gloria Mehlbrech, Todd David Mehlbrech and Lois Ann Jubb, seek the proceeds of the Servicemen's Group Life Insurance Policy No. G–32000 insuring the life of Carl R. Mehlbrech. Gloria Mehlbrech claims

all of the proceeds of the life insurance policy. Todd Mehlbrech and Lois Ann Jubb each claim one-half of the proceeds of the life insurance policy. The issues before the court are whether Carl R. Mehlbrech was mentally competent to designate his son, Todd Mehlbrech and his sister, Lois Ann Jubb, as the principal beneficiaries of his life insurance policy and, if so, at the time that he designated them as his principal beneficiaries, whether Todd Mehlbrech and Lois Ann Jubb exerted undue influence upon Carl R. Mehlbrech.

## UNDISPUTED FACTS

Prudential Insurance Company of America (Prudential) issued a contract of insurance, the Servicemen's Group Life Insurance Policy No. G–32000, to the Administrator of Veteran's Affairs, insuring the life of Carl R. Mehlbrech. Carl and Gloria Mehlbrech were married on July 13, 1985. On March 10, 1986, Carl Mehlbrech completed an election of beneficiary form directing that the proceeds of the insurance policy be paid "by law," thereby entitling his wife (now widow), cross-plaintiff, Gloria G. Mehlbrech, to the proceeds of the insurance policy. On March 28, 1986, Carl Mehlbrech executed a Last Will and Testament, in which he names Gloria Mehlbrech as the executrix and primary beneficiary of his estate.

In October of 1986, Carl Mehlbrech had a myocardial infarction. In March of 1988, Carl Mehlbrech had a second myocardial infarction. While undergoing heart catherization, he went into cardiac arrest requiring defibrillation. He suffered a period of anoxia resulting in organic brain disorder. On April 27, 1988, Carl Mehlbrech granted a power of attorney to Gloria Mehlbrech, thereby enabling her to act on his behalf in all matters concerning his estate until his death. Thereafter, Carl Mehlbrech had coronary bypass surgery. In approximately February of 1990, he was placed on leave as temporarily disabled from the United States Army because of his physical and mental condition.

On or after February of 1990, Carl Mehlbrech threatened and physically assaulted his wife, Gloria Mehlbrech, at least two times. In December of 1990, Carl and Gloria Mehlbrech entered into a separation agreement. They remained separated until March of 1991. During the separation, Carl Mehlbrech kept in contact with his wife by telephone and with cards and letters. In October of 1991, Gloria Mehlbrech filed a petition for divorce. Gloria Mehlbrech took no action on the petition for divorce, and it was dismissed. Following another violent outburst by Carl Mehlbrech in July of 1992, Gloria Mehlbrech filed a second petition for divorce. This petition for divorce was pending when Carl Mehlbrech died.

During the last two months of his life, Carl Mehlbrech lived at the Elks Lodge recreational vehicle park located in Oregon City, Oregon. Although Carl Mehlbrech never went to the State of Texas after July of 1992, he and Gloria Mehlbrech communicated by telephone, cards and letters. At the time of his death, Carl and Gloria Mehlbrech were discussing a reconciliation, although the petition for divorce, which was filed in July of 1992, was still pending.

On June 30, 1993, Carl Mehlbrech completed an election of beneficiary form, naming his son, Todd Mehlbrech, and his sister, Lois Ann Jubb, as the principal beneficiaries of Policy No. G–32000, and his sister Doris Jean Mehlbrech, as a contingent beneficiary. On July 15, 1993, Prudential sent Carl Mehlbrech a letter requesting that he complete another election of beneficiary form because the election that he had made could not be approved as written. On July 20, 1993, Carl Mehlbrech executed an election of beneficiary form, again naming his son, Todd Mehlbrech, and his sister, Lois Ann Jubb, as principal beneficiaries, and his sister, Doris Jean Mehlbrech, and his son, Todd Mehlbrech, as contingent beneficiaries. When Carl Mehlbrech executed the election of beneficiary form on July 20, 1993, he discussed with his mother his desire to have his son, Todd Mehlbrech, receive his share of the insurance proceeds in thirty-six monthly installments instead of in one lump sum. Carl Mehlbrech explained to his mother that he did not want his son to be tempted to buy a "fancy automobile," and that with the insurance proceeds disbursed in monthly pay-

ments, he felt his son would be more likely to use the proceeds for an education.

On July 26, 1993, Carl Mehlbrech died. Prudential received the election of beneficiary form executed on July 20, 1993 before the death of Carl Mehlbrech. Gloria Mehlbrech, Carl Mehlbrech's widow, Todd Mehlbrech, Carl Mehlbrech's son, and Lois Ann Jubb, Carl Mehlbrech's sister, have claimed the proceeds of Carl Mehlbrech's insurance policy.

## CONTENTIONS OF THE PARTIES

Gloria Mehlbrech, the widow of Carl Mehlbrech, contends that Carl Mehlbrech was not competent to make an election of beneficiary on July 20, 1993 because he suffered from an organic brain disorder, and that Todd Mehlbrech and Lois Ann Jubb exerted undue influence over Carl Mehlbrech on July 20, 1993 when he named them as beneficiaries of his life insurance policy.

Todd Mehlbrech and Lois Ann Jubb contend that there are no genuine issues of fact, and they are entitled to judgment as a matter of law on the crossclaims of Gloria Mehlbrech. Todd Mehlbrech and Lois Ann Jubb contend that the undisputed facts establish that Carl Mehlbrech understood the nature and effect of the election of beneficiary forms and was not under undue influence when he signed the forms in June of 1993 and again in July of 1993.

Gloria Mehlbrech contends that the evidence that she has presented is sufficient to permit a reasonable trier of fact to find that Carl Mehlbrech was not mentally competent at the time that he executed the election of beneficiary forms and/or that Carl Mehlbrech's mental state was such that Todd Mehlbrech and Lois Ann Jubb were able to exert undue influence over him at the time that he executed the election of beneficiary forms. Gloria Mehlbrech relies on the medical records of Carl Mehlbrech indicating that he suffered from organic brain disorder from March of 1988 until his death. She also relies on Carl Mehlbrech's Last Will and Testament, the durable power of attorney that he executed, and the fact that she was the beneficiary of another of his life insurance policies to show that it was not logical for Carl Mehlbrech to name her, Gloria Mehlbrech, as the beneficiary of all of his estate, with the exception of only this one life insurance policy. According to Gloria Mehlbrech, these facts are evidence of Carl Mehlbrech's mental incapacity and of the undue influence exerted by Todd Mehlbrech and Lois Ann Jubb. She argues that a trier of fact must resolve this dispute.

## APPLICABLE LAW

■ Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The rule does not require that there be no factual disputes. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). A material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'spe-

cific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

■ Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N.Am.,* 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.,* 575 F.2d 692, 699 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## ANALYSIS AND RULING

The parties agree that on June 30, 1993 and July 20, 1993, Carl Mehlbrech executed election of beneficiary forms naming his son, Todd Mehlbrech, and his sister, Lois Ann Jubb, as the beneficiaries of the life insurance policy at issue, and that Prudential received these forms prior to the death of Carl Mehlbrech. Accordingly, if the election of beneficiary forms executed by Carl Mehlbrech are valid, the proceeds of the life insurance policy are payable to Todd Mehlbrech and Lois Ann Jubb. *See* 38 U.S.C. § 1970(a). The issues presented in this case are whether Carl Mehlbrech had sufficient mental capacity to effect a valid election of beneficiary and whether he did so without the undue influence of Todd Mehlbrech and/or Lois Ann Jubb.

■ Because the insurance policy at issue is a Servicemen's Group Life Insurance Policy, federal law governs the question of mental capacity. *See Taylor v. United States,* 113 F.Supp. 143 (W.D.Ark.1953). In *Taylor,* the court adopted this test for mental capacity:

> To be capable of effecting a valid change of beneficiary a person should have clearness of mind and memory sufficient to know the nature of the property for which he is about to name a beneficiary, the nature of the act he is about to perform, the names and identities of those who are the natural objects of his bounty; his relationship towards them, and the consequences of his act, uninfluenced by any material delusions.

*Id.* at 148.

■ The medical records establish that Carl Mehlbrech was examined by a psychiatrist on April 22, 1993, three months before he executed the election of beneficiary forms at issue. The psychiatrist noted that Carl Mehlbrech suffered from a chronic, but moderate, organic mental disorder, manifested by continued problems with memory, emotional dyscontrol, and poor impulse control as a result of anoxia in 1988. The psychiatrist made the following recommendations:

> Patient has shown no significant improvement in his mental status since being retired from active duty and placed on [temporary disability retirement]. He has had various medical treatment regimens; the last was abruptly stopped because of significant emotional discontrol [sic] and the patient's fear of potentially violent behavior. It is unlikely that his mental condition will improve. He has developed some compensatory mechanisms that assist him, but his ability to perform meaningful work and to work with others is definitely impaired. Consideration should be given to placing him on permanent retirement. *He is able to manage his affairs.*

Exhibit N to Defendants' Todd Mehlbrech and Lois Jubb's Memorandum in Support of Their Motion for Summary Judgment, p. 3 (emphasis added by the court). On June 11, 1993, the Fort Lewis–Physical Evaluation Board concluded that Carl Mehlbrech was 70% disabled, but only 30% of his disability was related to his organic brain disorder. *Id.,* Exhibit O at 3.

That Carl Mehlbrech suffered from an organic brain disorder at the time that he

executed the election of beneficiary forms at issue is undisputed. What is disputed is whether Carl Mehlbrech was mentally competent to execute the election of beneficiary forms. Carl Mehlbrech's organic brain disorder started in 1988, approximately five years before he executed the election of beneficiary forms at issue. During those five years, Carl Mehlbrech managed his affairs. No evidence has been presented suggesting that he was unable to manage his affairs. The uncontradicted evidence is that in the two months preceding his death and during the time that he executed both of the election of beneficiary forms, Carl Mehlbrech handled his own day-to-day business affairs, drove an automobile, paid his own bills, ordered automotive parts for his son's damaged motorcycle, and told his son how to repair the motorcycle. He also interacted with third persons socially and in a business setting.

In her affidavit, Agnes Mehlbrech, the mother of Carl Mehlbrech, states that Carl Mehlbrech was aware of the consequences of his actions when he executed the election of beneficiary forms. She states that he discussed with her the reason for his decision to make the proceeds of the life insurance policy payable to his son in monthly installments. Agnes Mehlbrech states that he told her that he thought monthly payments might encourage his son to use the money for his education.

The uncontroverted affidavits of Todd Mehlbrech, Lois Ann Jubb and Agnes Mehlbrech show that he was able to manage his affairs, i.e. that he understood the nature of his property, that he knew the nature of the act he was performing in designating his beneficiaries, and that he knew the natural objects of his bounty. Gloria Mehlbrech presented letters and cards from Carl Mehlbrech expressing his affection for her, which is consistent with his decision not to change his Last Will and Testament or the beneficiary of other of his life insurance policies. However, these letters are also evidence of Carl Mehlbrech's mental capacity because they are coherent and articulate.

The court finds that Gloria Mehlbrech has not carried her burden of producing competent evidence tending to show that Carl Mehlbrech did not know the nature of his act when he designated Todd Mehlbrech and Lois Ann Jubb as principal beneficiaries of his life insurance policy, or that he did not know the nature of the property for which he designated them beneficiaries, or that he did not know the natural objects of his bounty. From the medical evidence and the affidavits of Todd Mehlbrech, Lois Ann Jubb and Agnes Mehlbrech, the court finds as a matter of law that the record taken as a whole could not lead a rational trier of fact to find that Carl Mehlbrech lacked the mental capacity to effect a change in the beneficiary of his life insurance policy at the time that he made such a change.

■ Gloria Mehlbrech argues, in the alternative, that Todd Mehlbrech and Lois Ann Jubb exerted undue influence over Carl Mehlbrech at the time that he changed the beneficiary of his life insurance policy. The parties agree that state law applies to the issues of undue influence, duress and fraud. *See Lyle v. Bentley,* 406 F.2d 325 (5th Cir. 1969). In *Troyer v. Plackett,* 48 Or.App. 497, 617 P.2d 305 (1980), the court listed the following factors to be considered in determining whether undue influence was a factor in the change of beneficiary in a will: (1) the procurement or participation of the beneficiary in the preparation of the document; (2) the availability of independent advice; (3) secrecy and haste; (4) a change of attitude towards others; (5) a change in the plan for disposition of property; (6) an unnatural or unjust gift; and (7) susceptibility to influence.

■ Todd Mehlbrech and Lois Ann Jubb did not participate in the procurement or preparation of the election of beneficiary forms completed by Carl Mehlbrech on June 30, 1993 and on July 20, 1993. The change in beneficiaries was neither secret nor completed in haste. In May of 1993, Carl Mehlbrech told Lois Ann Jubb that he intended to designate her and his son, Todd Mehlbrech, as the principal beneficiaries of the life insurance policy at issue. In response, Lois Ann Jubb told Carl Mehlbrech to do whatever he thought was appropriate. Carl Mehlbrech also discussed the change in beneficiaries with his mother. Todd Mehlbrech, however,

did not know of his father's intent to designate him as a beneficiary of his life insurance policy and had no discussions with his father regarding life insurance. Todd Mehlbrech and Lois Ann Jubb did not know that they were the principal beneficiaries of the life insurance policy until after the death of Carl Mehlbrech.

The evidence establishes that Carl Mehlbrech's decision to change the principal beneficiary of his life insurance policy was not made in haste. He first changed the principal beneficiary of the life insurance policy at issue from Gloria Mehlbrech to his son, Todd Mehlbrech, and his sister, Lois Ann Jubb, on June 30, 1993. On July 15, 1993, Prudential requested that he complete another election of beneficiary form. On July 20, 1993, he executed a second election of beneficiary form, again designating Todd Mehlbrech and Lois Ann Jubb as the principal beneficiaries.

Carl Mehlbrech designated his son and his sister, natural objects of his bounty, as beneficiaries of one of his life insurance policies. His estranged wife, Gloria Mehlbrech, remained the beneficiary of another life insurance policy and the executrix and primary beneficiary of his will. Finally, the medical evidence shows that less than three months before he designated his son and his sister as principal beneficiaries of the life insurance policy at issue, a psychiatrist had examined him and found that he could manage his own affairs.

In support of her argument of undue influence, Gloria Mehlbrech relies on a letter to Carl Mehlbrech from his sister, Lois Ann Jubb, advising him to remove Gloria Mehlbrech as the beneficiary of his life insurance policies. However, the letter was sent in February of 1992, almost sixteen months before Carl Mehlbrech changed the beneficiaries of the life insurance policy at issue. Although Lois Ann Jubb advised Carl Mehlbrech to remove Gloria Mehlbrech as a beneficiary, she did not advise him to designate herself as the beneficiary of the life insurance policy. In addition, the remainder of the letter suggests the possibility of litigation between Carl and Gloria Mehlbrech. Gloria Mehlbrech also states that Lois Ann Jubb told her that she took Carl Mehlbrech to several bars just days before his death, even though she knew he was seriously ill. Even if true, this evidence has no bearing on whether Carl Mehlbrech was subjected to undue influence on June 30, 1993 and again on July 20, 1993 when he executed the election of beneficiary forms.

Considering all of the evidence presented, viewed in the light most favorable to Gloria Mehlbrech and the relevant factors under *Troyer*, the court concludes that Gloria Mehlbrech has failed to present sufficient evidence of undue influence to raise a triable issue of fact. Accordingly, the court concludes that defendants Todd Mehlbrech and Lois Ann Jubb are entitled to summary judgment on Gloria Mehlbrech's crossclaim for fraud, duress and undue influence (Second Claim for Relief).

In her response to the motion of Todd Mehlbrech and Lois Ann Jubb for summary judgment, Gloria Mehlbrech acknowledges the holding in *Brewer v. Zawrotny*, 978 F.2d 1204 (10th Cir.1992), and concedes that federal law preempts her claim under the community property laws of the State of Texas (Third Claim for Relief). Defendant Gloria Mehlbrech's Memorandum in Opposition to Defendants Todd David Mehlbrech and Lois Ann Jubb's Motion for Summary Judgment, p. 15. Accordingly, the court concludes that Todd Mehlbrech and Lois Ann Jubb are entitled to summary judgment on that claim as well.

## CONCLUSION

The motion of Todd Mehlbrech and Lois Ann Jubb for summary judgment (# 39) is granted.