**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 14 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CINDY RICE,

      Plaintiff-Appellant,

v.

THE OFFICE OF
SERVICEMEMBERS' GROUP LIFE
INSURANCE, a subsidiary of The
Prudential Insurance Company of
America, a corporation,

      Defendant-Appellee.

No. 99-6354

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 98-CV-1566-M)**

---

Glen Mullins, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

David L. Kearney (Amy M. Cox with him on the brief), of Gable & Gotwals,
Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **EBEL** and **HENRY**, Circuit Judges, and **ROGERS**,* District Judge.

---

**EBEL**, Circuit Judge.

---

*Honorable Richard Dean Rogers, Senior District Court Judge, District of
Kansas, sitting by designation.

This case is about the proceeds of a Servicemembers' Group Life Insurance (SGLI) policy covering Ronald Rice ("Decedent"). Cindy Rice ("Plaintiff") was Decedent's wife and had been the beneficiary of this policy, but Decedent changed the beneficiary to his mother twenty-three days before he committed suicide. Plaintiff argues that the change was invalid because Decedent lacked sufficient mental capacity at that time and his mother exerted undue influence over him. The district court granted summary judgment to the insurance company on the issue of undue influence, and a jury found against Plaintiff on the issue of mental capacity. On appeal, Plaintiff argues that (1) the district court incorrectly instructed the jury that there is a rebuttable presumption of mental capacity; (2) there was sufficient evidence to overcome summary judgment on the issue of undue influence; and (3) she was entitled to judgment as a matter of law on the issue of mental capacity. We AFFIRM on all issues.

## BACKGROUND

Decedent committed suicide on May 8, 1998. As a member of the Army Reserves, he carried a $200,000 life insurance policy from the Office of Servicemembers' Group Life Insurance (OSGLI), which is a subsidiary of the Prudential Insurance Company of America. On April 16, 1998, twenty-three days before his death, Decedent changed the beneficiary of this policy from his wife,

Plaintiff, to his ailing mother, Wilma Evans. At the same time, he filed a "Record of Emergency Data" in which he instructed the Army to inform only his mother if he died. It did not list Plaintiff, their daughter, Erika, or his four sons from a previous marriage. Earlier, on January 25, 1998, Decedent had signed a military benefits form that listed his former wife, Kathy Rice, as his spouse and ended his children's eligibility for benefits. The misinformation on this form may have been due to glitches in the military's computer system.

Decedent had a history of clinical depression, for which he had received some treatment, and had attempted suicide before. Friends and family testified that Decedent was acting somewhat strangely in the weeks leading up to his suicide. The Rices' marriage was under strain, and at times Decedent was considering divorcing Plaintiff and moving back to West Virginia with his mother, Evans.

Evans testified that during the last few months of his life, Decedent was calling her at least daily, as opposed to two to three times a month before then. Phone records show that the two spoke for 33 minutes on April 15, the day before he designated her the beneficiary of his life insurance policy. Evans testified that they did not discuss the life insurance policy until several days after he had changed it.

Plaintiff sought payment from the OSGLI after Decedent's death. The OSGLI provided Plaintiff an opportunity to document Decedent's lack of mental capacity when he changed the beneficiary of his insurance policy. Because Plaintiff provided only lay affidavits rather than a medical opinion, the OSGLI paid Evans.

Plaintiff brought this suit, arguing both that Decedent did not have the mental capacity to change beneficiaries on April 16 and that Evans exercised undue influence on him. The district court granted summary judgment on the undue influence question. After a trial on the issue of mental capacity, the jury found for the OSGLI.

## DISCUSSION

I. <u>Jurisdiction</u>

Both parties concede, and the district court accepted, that federal jurisdiction over this case is conferred by 38 U.S.C. § 1975. Nonetheless, we have an independent duty to examine our jurisdiction. <u>Maier v. EPA</u>, 114 F.3d 1032, 1036 (10th Cir. 1997). We ultimately conclude that we have jurisdiction, but on different grounds than that advanced by the parties.

The jurisdictional provision relied on by the parties provides, "The district courts of the United States shall have original jurisdiction of any civil action or

- 4 -

claim against the United States founded upon [the SGLI subchapter]." 38 U.S.C. § 1975. Plaintiff's lawsuit, however, is not against the United States. Rather, it is against the OSGLI, a division of the Prudential Insurance Company and therefore a private entity. This is in accordance with the governing regulations, which state that "[a]ctions at law or in equity to recover on the policy, in which there is not alleged any breach of any obligation undertaken by the United States, should be brought against the insurer." 38 C.F.R. § 9.13.

Several district courts have assumed without analysis that § 1975 or its predecessor, former 38 U.S.C. § 775, confer federal jurisdiction over suits against the OSGLI or Prudential. E.g., Kilburn v. SGLI Co., 587 F. Supp. 54, 54 (S.D. Ohio 1984); cf. Stratton v. SGLI Co., 422 F. Supp. 1119, 1120 (S.D. Iowa 1976) (noting that "no objection has been made to the Court's taking of jurisdiction" under former § 775).[1] None of these cases provide analysis of the jurisdictional question, and thus they do not constitute strong precedent on the issue. Cf. United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 38 (1952) ("[T]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio.").

---

[1]At oral argument, counsel for the OSGLI also cited Prudential Insurance Co. v. Mehlbrech, 878 F. Supp. 1382 (D. Or. 1995), to support jurisdiction under § 1975. Mehlbrech, however, was an interpleader action, id. at 1383, and jurisdiction was therefore apparently proper under 28 U.S.C. § 1335. Mehlbrech does not cite or discuss § 1975.

In any event, we reject this position as inconsistent with the plain language of § 1975. We therefore follow the majority of courts that look to some other statutory basis for federal jurisdiction. See, e.g., Shannon v. United States, 417 F.2d 256, 263 (5th Cir. 1969) (discretionary pendant party jurisdiction); Melton v. White, 848 F. Supp. 1511, 1512 (W.D. Okla. 1994) (federal question); Prudential Ins. Co. of Am. v. Moorhead, 730 F. Supp. 727, 728 (M.D. La. 1989) (diversity and federal question).

We see two other provisions that might support Plaintiff's allegation of federal jurisdiction. The first is 28 U.S.C. § 1332, the diversity jurisdiction statute. "We examine the face of the complaint to determine whether a party has adequately presented facts sufficient to establish diversity jurisdiction. The party asserting jurisdiction must allege facts essential to show jurisdiction." Gaines v. Ski Apache, 8 F.3d 726, 729 (10th Cir. 1993). Thus, the complaint must allege that the plaintiff and defendant are citizens of different states and that the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a). A corporation is treated as a citizen of the state where it is incorporated and the state where it has its principal place of business. Id. § 1332(c).

Here, the complaint alleges that Plaintiff is a citizen of Oklahoma, but does not set forth the citizenship of the OSGLI or the amount in controversy. "[W]here the pleadings are inadequate, we may review the record to find evidence

that diversity exists." Gaines, 8 F.3d at 729. We have reviewed the record and do not find that it establishes diversity jurisdiction.

The other potential basis for federal jurisdiction is 28 U.S.C. § 1331, the federal question statute. This section confers jurisdiction over cases "arising under" federal law. For a case to arise under federal law, the federal question must be apparent on the face of a well-pleaded complaint, and Plaintiff's cause of action must be created by federal law or, if it is a state-law cause of action, its resolution must necessarily turn on a substantial question of federal law, and that federal law in turn must create a private cause of action. Merrell Dow Pharms. v. Thompson, 478 U.S. 804, 808, 811-12 (1986); Erwin Chemerinsky, Federal Jurisdiction 285 (3d ed. 1999).

For the purposes of this appeal, we need not determine whether Plaintiff has asserted a cause of action under state or federal law. It is sufficient for us to find that (1) the issues of mental capacity and undue influence are governed by federal law; (2) these issues raise substantial questions of federal law that must be resolved; and (3) the federal SGLI statute gives rise to an implied private cause of action.

First, federal law governs the issues of mental capacity and undue influence in this case. As the Seventh Circuit explained in a different context,

> SGLI is a federal program; in fact, technically the government rather
> than the serviceman is the policyholder. . . . As we have both a

government contract and a federal statute . . . the case for using federal law to answer the question of who is to receive the proceeds of the insurance policy is compelling.

Often a court asked to fill a gap in a federal statute will do so by borrowing a state's common law . . . . But borrowing state law would be a mistake in the case of soldiers' life insurance policies. Frequently . . . the policy is issued wherever the soldier happens to be stationed when thoughts of mortality assail him. . . . It would be arbitrary to subject issues arising under the policy to the law of a particular state. Better that these policies should be governed by a uniform set of rules untethered to any particular jurisdiction. Congress's desire for uniformity is reflected in the statute's detailed provision . . . regarding who shall receive the proceeds if a beneficiary is not named.

Prudential Ins. Co. of Am. v. Athmer, 178 F.3d 473, 475 (7th Cir. 1999) (citations omitted); accord Prudential Ins. Co. v. Tull, 690 F.2d 848, 849 (4th Cir. 1982) (per curiam). We note also that the SLGI statute, 38 U.S.C. §§ 1965-1979, preempts state law determining the right to a policy's proceeds. Ridgway v. Ridgway, 454 U.S. 46, 60 (1981); Prudential Ins. Co. v. King, 453 F.2d 925, 931 (8th Cir. 1971). Given these considerations, we believe federal law should govern the issues of mental capacity and undue influence in this case. Accord Prudential Ins. Co. of Am. v. Mehlbrech, 878 F. Supp. 1382, 1386 (D. Or. 1995).[2] But cf. Lyle v. Bentley, 406 F.2d 325, 328 (5th Cir. 1969) (applying Texas law on the issue of undue influence without discussion of the choice-of-law issue);

---

[2]Although the Mehlbrech court applied federal law to the issue of mental capacity, it applied state law to the issue of undue influence, noting that the parties agreed that state law controls. Id. at 1387. We believe federal law applies equally to both issues.

Roecker v. United States, 379 F.2d 400, 405, 408 (5th Cir. 1967) (finding that state law governs the propriety of a guardian's discharge of his duties leading to a redesignation of a National Service Life Insurance policy's beneficiary, but emphasizing that the question was not the insured's competence).

Second, to recover on the insurance policy, Plaintiff must prove she is the beneficiary and to do so she must show that Decedent's purported change was ineffective, either because he lacked the capacity to do so or because he was under undue influence at the time. These are substantial questions – indeed, the only disputed issues in the case – on which the outcome of this lawsuit turn.

Third, there is an implied cause of action under the SGLI statute for beneficiaries against the OSGLI. Parker v. OSGLI, 91 F. Supp. 2d 820, 824-25 (E.D. Pa. 2000). Whether a federal statute contains an implied cause of action is ultimately a question of determining what Congress intended. Karahalios v. Nat'l Fed'n of Fed. Employees, 489 U.S. 527, 532 (1989). Such congressional intent can be implied by the text or structure of the statute. Alexander v. Sandoval, 121 S. Ct. 1511, 1520 (2001). Although the text of the SGLI statute is silent, we believe its structure shows that Congress intended to allow private causes of action to enforce the provisions of SGLI policies. The statute requires beneficiaries to make "claim[s]" for payment under some circumstances, but contains no mechanism (administrative or otherwise) to enforce the insurance

contract.  38 U.S.C. § 1970(b), (c).  In addition, the applicable regulations contemplate that beneficiaries may bring "[a]ctions at law or in equity to recover" from the OSGLI.  38 C.F.R. § 9.13.  Further, "the interpretation and administration of an insurance policy issued under the authority of the servicemen's insurance statute . . . [is] supplied by federal common law." Athmer, 178 F.3d at 475.  Although none of this refers explicitly to a federal forum, it would be somewhat anomalous for Congress to rely completely on state causes of action when, as explained above, federal law governs most aspects of the insurance policy and preempts inconsistent state law, and when the federal government has important interests at stake.  For these reasons, we find that the SGLI statute contains an implied private cause of action.

Because this case involves substantial federal questions, the federal courts have jurisdiction under 28 U.S.C. § 1331.  We exercise jurisdiction over this appeal under 28 U.S.C. § 1291.

## II.  Mental Capacity

The district court instructed the jury that "the law presumes that Ronald Rice, the deceased, had the mental capacity to change the policy beneficiary to his mother."  The instructions also stated that this presumption could be "outweighed by evidence to the contrary" and that Plaintiff had to establish Decedent's lack of

mental capacity "by the greater weight of the evidence."  Plaintiff raises two objections to the presumption instruction: first, that there is no general presumption of mental capacity to change one's beneficiary; and second, that the presumption was rebutted and should not have been included in the jury instructions.  Only the first of these objections was raised below.

A.  <u>Presumption of Mental Capacity Under Federal Law</u>

We review de novo legal objections to the jury instructions, reading the instructions as a whole.  <u>Medlock v. Ortho Biotech</u>, 164 F.3d 545, 552 (10th Cir. 1999).  The instructions need not be flawless.  <u>Id.</u>  "[N]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law."  <u>Webb v. ABF Freight Sys.</u>, 155 F.3d 1230, 1248 (10th Cir. 1998).

The question of mental capacity is not addressed in the SGLI Act.

> [W]hen a question relating to the interpretation and administration of an insurance policy issued under the authority of the servicemen's insurance statute arises that is not answered by the statute itself . . . the answer is to be supplied by federal common law.  Since the concept of 'federal common law' is nebulous when a statute is in the picture, it might be better to jettison the concept in that context and say simply that in filling gaps left by Congress in a federal program the courts seek to effectuate federal policies.

Athmer, 178 F.3d at 475 (citations omitted).  We must therefore fashion appropriate rules on the requisite mental capacity to change one's insurance beneficiary.

We have not previously addressed this precise issue.  In Wiley v. United States, 399 F.2d 844, 846 (10th Cir. 1968), we recognized a presumption in favor of mental capacity when the insured had been declared competent by the Veterans Administration and a state court.  Here, however, Decedent was never declared competent (or incompetent) by any court or agency.

Nonetheless, under these circumstances, we find no reversible error in the district court's instruction.  Most important, the presumption of mental capacity tracks Plaintiff's burden of proof on the issue.  Plaintiff took no objection to the court's instruction on the burden of proof, and reading the instructions together, we believe they stated the law correctly.

Our holding is supported by other courts that have noted a federal presumption of mental capacity in the insurance context.  See, e.g., Howells State Bank v. Novotny, 69 F.2d 32, 34 (8th Cir. 1934) (noting "a presumption of mental capacity" to assign one's life insurance policy); Metro. Life Ins. Co. v. Anderson, 101 F. Supp. 808, 811 (E.D. La. 1951) (noting the "legal presumption of mental capacity" to change one's insurance beneficiary); cf. 3 Couch on Insurance § 40:2 (3d ed. 2000) ("The fact that a policy was issued raises the presumption that the

insured was of sound mind at the time the contract was entered into, and clear proof is required to establish that he or she lacked sufficient capacity." (footnotes omitted)). We also draw support from the Department of Veterans Affairs, which in administrative proceedings involving the validity of a change in beneficiary applies a "general but rebuttable presumption that every testator possesses testamentary capacity." 38 C.F.R. § 3.355(c).

State law also supports the district court's instruction. See, e.g., Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 272 (8th Cir. 1992) (applying Minnesota law); Lynn v. Magness, 62 A.2d 604, 607 (Md. 1949) (stating that "the law presumes every man to be sane and to possess the requisite mental capacity" to change his beneficiary); Matthews v. Acacia Mut. Life Ins. Co., 392 P.2d 369, 373 (Okla. 1964) ("The law presumes every person sane, and casts the burden of establishing insanity on the one asserting its existence."); Estate of Galland v. Rosenberg, 630 S.W.2d 294, 297 (Tex. App. 1981) ("A presumption . . . exists that the decedent possessed the requisite mental capacity to make his designation."). Finally, the instruction is consistent with our jurisprudence in other areas of the law. For example, under federal law, "the capacity of a person offered as a witness is presumed, and in order to exclude a witness on the ground of mental incapacity, the existence of the incapacity must be made to appear." United States v. Haro, 573 F.2d 661, 667 (10th Cir. 1978).

In sum, the district court correctly found that federal law generally presumes a person's mental capacity in this context.

B. Instructing the Jury on Presumptions

Because Plaintiff did not raise this objection below, we review the challenged instruction only to see whether it is "patently plainly erroneous and prejudicial." Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1054 (10th Cir. 1988); cf. Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." (emphasis added)). "Only rarely will we reverse based on allegedly erroneous instructions to which there was no objection at trial; the party claiming plain error has the heavy burden of demonstrating fundamental injustice." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999) (quotation marks omitted).

The full text of the challenged instruction is as follows:

> Presumptions are rules based upon experience or public policy and are established in the law to assist a jury in discovering the truth. Presumptions take the place of evidence unless and until outweighed by evidence to the contrary.
> In this case, the law presumes that Ronald Rice, the deceased, had the mental capacity to change the policy beneficiary to his mother.

- 14 -

The next instruction, to which no objection has been taken, stated:

> In this action, where plaintiff, Cindy Rice, alleges that Ronald Rice, the insured, lacked the mental capacity to change the beneficiary to his policy from his wife to his mother, plaintiff has the burden of establishing by the greater weight of the evidence that on the date Ronald Rice executed the change of beneficiary form, Ronald Rice lacked the requisite mental capacity.

Plaintiff argues that it was incorrect under Federal Rule of Evidence 301 for the court to give the first of these instructions to the jury in this case. Rule 301 states that a presumption imposes a burden of production, but does not shift the burden of proof. Plaintiff argues that Rule 301 incorporates the "bursting bubble" theory of presumptions. Under this approach, once she met her burden of production the presumption would drop out of the picture entirely, and therefore it would have been inappropriate to mention the presumption in the jury instructions. However, the advisory committee notes reject the notion that the presumptions authorized by Rule 301 would simply disappear when contrary evidence is introduced. See Fed. R. Evid. 301 advisory committee notes, 1972 Proposed Rules. While there is conflicting authority, see, e.g., Bratton v. Yoder Co. (In re Yoder Co.), 758 F.2d 1114, 1119-20 (6th Cir. 1985), we cannot say that the jury instruction amounted to plain error.

In any event, in this case Plaintiff bore the burden of proof on the issue of mental capacity even absent the presumption. Moreover, the instruction made it clear that the presumption could be overcome by a preponderance of the evidence.

There is sufficient authority that a presumption instruction that tracks the burden of proof as in this case is not reversible error. See, e.g., Lewis v. Owen, 395 F.2d 537, 542 (10th Cir. 1968); Dostal v. Balt. & Ohio R.R. Co., 189 F.2d 352, 355-56 (3d Cir. 1951); cf. Brown v. Henderson, 189 N.E. 41, 43 (Mass. 1934) (Lummus, J., concurring in the result) ("The statutory presumption . . . is wholly overshadowed by that burden of proof, and can have no practical effect. . . . [It] is like a handkerchief thrown over something also covered by a blanket. For this reason, if the burden of proof is correctly stated to the jury, there can be no reversible error in dealing with the presumption . . . ."). Whether or not the district court was correct to instruct the jury on the presumption of mental capacity in this case, the instructions as a whole were not "patently plainly erroneous and prejudicial." Zimmerman, 848 F.2d at 1054.

III.  Undue Influence

Plaintiff argues that the district court erred in granting OSGLI summary judgment on the issue of undue influence. We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). To defeat a motion for summary judgment, the nonmoving party must show specific evidence that creates

a genuine issue as to a material fact. Id. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Id. We assume for the purposes of this case that we may consider the evidence adduced at trial, because Plaintiff sought to have the issue submitted to the jury. Cf. Anixter v. Home-Stake Prod. Co., 977 F.2d 1533, 1548 (10th Cir. 1992) (noting that a partial grant of summary judgment is not a final order and is subject to reconsideration at trial). But cf. Guillory v. Dotmar Indus., 95 F.3d 1320, 1327 (5th Cir. 1996) ("We cannot consider facts and evidence uncovered during trial when assessing the propriety of the summary judgment.").

As with the issue of mental capacity, undue influence is not discussed in the SGLI statute. We must therefore apply gap-filling federal law to this issue. Athmer, 178 F.3d at 475. In the ERISA context, the Sixth Circuit recently reviewed the law of various states and fashioned a federal-common-law rule governing when undue influence invalidates a change of beneficiary. Tinsley v. Gen. Motors Corp., 227 F.3d 700, 704 (6th Cir. 2000).

> [U]ndue influence is generally defined as influence that is sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will. A showing of mere motive or opportunity to exert excessive control over another is not enough to make out a claim of undue influence; rather, the influence must actually be exerted, either prior to or at the time of

- 17 -

the execution of the relevant document. Courts have looked at a number of factors to determine whether undue influence has been exerted in a given case, including the physical and mental condition of the benefactor; whether the benefactor was given any disinterested advice with respect to the disputed transaction; the "unnaturalness" of the gift; the beneficiary's role in procuring the benefit and the beneficiary's possession of the document conferring the benefit; coercive or threatening acts on the part of the beneficiary, including efforts to restrict contact between the benefactor and his relatives; control of the benefactor's financial affairs by the beneficiary; and the nature and length of the relationship between the beneficiary and the benefactor.

Id. at 704-05 (citations and quotation marks omitted).

Applying this test, we hold that Plaintiff has not presented enough evidence for a jury to find that Evans exercised undue influence on Decedent. There was evidence that Decedent's mental condition was poor, and he certainly had a long relationship with his mother, but none of the other factors support a finding of undue influence. Plaintiff relies most heavily on Evans's increased number of telephone conversations with Decedent in the weeks leading up to his change of beneficiary, and in particular on the thirty-three minute conversation they had the night before he did so. This at most shows opportunity, however, which is not sufficient to prove undue influence. There was no evidence that Evans and Decedent even discussed the change of beneficiary before it happened. While Evans told Decedent that "it is a money thing" with Plaintiff – that Plaintiff wanted him around only for his money – she made that comment in response to Decedent's complaints that Plaintiff would not let him leave, even though he

wanted to move back to West Virginia. This comment does not create a genuine issue as to her role in inducing the change of beneficiary.

On this record, no reasonable jury could have concluded that Evans exerted undue influence over Decedent to cause him to make her the beneficiary of his SGLI policy. The district court correctly granted summary judgment to the OSGLI.

IV. Judgment as a Matter of Law

Plaintiff argues that she was entitled to judgment as a matter of law on the issue of mental capacity. We review de novo the district court's denial of a motion for judgment as a matter of law. Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999). Such a judgment should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, "the evidence points but one way." Id. We do not weigh the evidence or pass on the credibility of witnesses. Id.

Viewed in this light, the evidence was sufficient to conclude that Decedent had the mental capacity to change the beneficiary of his insurance policy. He was able to fill out the change-of-beneficiary and other military forms. The officer who helped Decedent fill out these forms testified that Decedent appeared to understand what he was doing. He did not appear to be confused. During this

period, Decedent was performing his work in the Army Reserves adequately. He was also writing some checks. Decedent's physician concluded that in April 1998, he had "no direct evidence from [his] conversations with Mr. Rice to suggest that he was mentally incompetent to handle his own affairs."

Plaintiff bore the burden of proving Decedent's mental incapacity. In the light of the above facts, a reasonable jury could have ruled against her. We therefore affirm the district court's denial of judgment as a matter of law.

## CONCLUSION

We AFFIRM the district court on all issues.