**PEAK MEDICAL OKLAHOMA NO. 5, INC., a Delaware corporation Plaintiff,**

v.

**Sheila COLLINS, Guardian of Georgia Ann Hart, Defendant.**

**No. 02–CV–096–EAJ.**

United States District Court,
N.D. Oklahoma.

July 19, 2002.

Windham Michael Hill, Don Willaims Danz, Syma S. Azam, Secrest Hill & Folluo, Tulsa, OK, for plaintiff.

Anthony M. Laizure, Karen Dunipace Goins, Tommy W. Humphries, Stipe Law Firm, Tulsa, OK, for defendant.

## ORDER

EAGAN, District Judge.

Now before the Court is the Defendant's Motion to Dismiss (Dkt.# 2) filed on March 4, 2002. The defendant requests that the Court dismiss this suit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b)(1).

### I.

In October 1985, Georgia Ann Hart ("Hart"), the mother of the plaintiff, Sheila Collins ("Collins"), suffered severe head injuries in an automobile accident, which left her partially paralyzed and both physically and mentally dependent upon others for her care and well being. On May 24, 2001, Collins admitted Hart into the Mayfair Nursing Center (the "Mayfair"), a licensed nursing facility owned and operated by the plaintiff, Peak Medical Oklahoma No. 5, Inc. ("Peak Medical"), in Tulsa, Oklahoma. At the time of Hart's admission, Peak Medical and Collins entered into an admission agreement (the "Admission Agreement"), which contained a provision in which the parties agreed to resolve any disputes arising out of or relating to the provision of services at the Mayfair through mediation or arbitration, and not by a lawsuit filed in court (the "Arbitration Clause").

On August 24, 2001, one of Hart's caretakers, Kevin Cooper ("Cooper"), battered and sexually assaulted her at the Mayfair, conduct for which the Tulsa County District Court (the "District Court") found him guilty of criminal abuse by a caretaker. Approximately three months later, on December 3, 2001, the District Court adjudicated Hart incompetent, and appointed Collins as her legal guardian. Collins filed a petition in the District Court on December 19, 2001, in which she asserted tort

claims against both Cooper and Peak Medical for assault, battery, and negligence, as well as a claim against Peak Medical for violation of the Oklahoma Nursing Home Care Act, Okla Stat. tit. 63, § 1–1901, *et seq.* (hereinafter, the "NHCA"). Peak Medical filed a motion to dismiss based upon the Arbitration Clause, which was still pending in the District Court as of the date Collins filed her motion to dismiss in this Court.

On February 5, 2002, Peak Medical filed its Petition to Stay State Court Action and to Enforce Arbitration and Brief in Support Thereof (Dkt. # 1, the "Petition") in this Court, naming Collins as the sole defendant. In its Petition, Peak Medical seeks to enforce the Arbitration Clause pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (hereinafter, the "FAA"). In particular, Peak Medical requests that the Court compel the arbitration of each of Collins's claims, and stay her pending state court action in its entirety until such arbitration is completed.

## II.

A motion to dismiss is properly granted when it appears beyond doubt that a plaintiff could prove no set of facts entitling him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Calderon v. Kansas Dept. of Social & Rehabilitation Services,* 181 F.3d 1180, 1183 (10th Cir.1999). For purposes of making this determination, a court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Calderon,* 181 F.3d at 1183; *see also Dill v. City of Edmond,* 155 F.3d 1193, 1201 (10th Cir.1998).

## III.

In support of her motion to dismiss, Collins argues that this Court lacks both federal question jurisdiction and diversity jurisdiction over this action. She principally contends that (i) the FAA does not create federal question jurisdiction, and (ii) complete diversity of citizenship does not exist between the parties. The Court addresses both of her arguments below.

### A. *Federal Question Jurisdiction*

 The federal question statute, Section 1331 of Title 28 of the United States Code, provides that:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331 (hereinafter, "Section 1331"). This statutory provision "confers jurisdiction over cases 'arising under' federal law." *Rice v. Office of Servicemembers' Group Life Ins.,* 260 F.3d 1240, 1245 (10th Cir.2001). "For a case to arise under federal law, the federal question must be apparent on the face of a well-pleaded complaint, and Plaintiff's cause of action must be created by federal law or, if it is a state-law cause of action, its resolution must necessarily turn on a substantial question of federal law, and that federal law in turn must create a private cause of action." *Id.* (citing *Merrell Dow Pharms. v. Thompson,* 478 U.S. 804, 808, 811–12, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); Erwin Chemerinsky, *Federal Jurisdiction* 285 (3d ed.1999)).

 "The [Federal] Arbitration Act is something of an anomaly in the field of federal-court jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under [Section 1331] or otherwise." *Id.*

Because it is clear that the FAA alone does not create independent federal-ques-

tion jurisdiction, Peak Medical argues, in its response brief, that jurisdiction arises from the question of whether the FAA preempts certain provisions of the NHCA. In particular, Section 1–1939 of the NHCA provides, in pertinent part:

> D. Any waiver by a resident or his legal representative of the right to commence an action under this section, whether oral or in writing, shall be null and void, and without legal force or effect.
>
> E. Any party to an action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect.

Okla. Stat. tit. 63, § 1–1939. In contrast, Section 2 of the FAA provides, in pertinent part, that:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In light of the obvious conflict between these two statutory provisions, Peak Medical contends that whether Section 2 of the FAA preempts Section 1–1939 of the NHCA presents a federal question which provides a basis for the Court to exercise its jurisdiction. The Court, however, does not find Peak Medical's argument persuasive.

The Fifth Circuit Court of Appeals, in *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683 (5th Cir.2001), considered a case with notably similar facts to the facts presented here. In *Rio Grande*, Pitts Farms, Inc. ("Pitts Farms"), an onion grower, filed suit in state court asserting state law claims against its insur-

ance agent, Rio Grande Underwriters, Inc. ("Rio Grande"), for failure to procure proper crop insurance coverage on Pitts Farms's behalf. *Id.* at 685. Initially, Rio Grande sought to avoid the litigation by requesting that the state court enforce arbitration provisions in its contracts with Pitts Farms. *Id.* Unable to obtain relief in state court, Rio Grande filed a petition in federal district court requesting that the court enter an order staying the state action and compelling arbitration under the FAA. *Id.* Although Rio Grande asserted numerous bases to support the exercise of the court's jurisdiction, the district court dismissed its petition for lack of subject matter jurisdiction. *Id.* On appeal, Rio Grande argued, *inter alia*, that the FAA's preemption of the Texas General Arbitration Act gave rise to a federal question. *Id.* In affirming the district court's dismissal of the petition, the Fifth Circuit expressly rejected Rio Grand's argument, and held that "conflict preemption is a defense, not an independent basis for jurisdiction." *Id.* (citing *Copling v. The Container Store, Inc.*, 174 F.3d 590, 595 (5th Cir.1999)).

Although the Court is unaware of any case from the Tenth Circuit which squarely addresses Peak Medical's argument, the Court finds that the holding of *Rio Grande* is not inconsistent with the law of this circuit, and therefore governs. *See Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir.1996)("[A] defendant's assertion of a defense based on federal law, such as the federal preemption of the state law on which plaintiff's claim is based, [does not provide] a proper basis for removal, even if both parties agree that the only issue for decision in the case is the validity of the federal preemption defense."). Although Peak Medical, in its Petition, alleges facts which give rise to the question of whether the FAA preempts certain provisions of the NHCA, *see* Petition, Dkt. # 1, pp. 19–20, at ¶ 19, the Court

finds that such allegations merely raise a possible defense to one of Collins's state law claims. Since these allegations defensively raise an issue of "conflict preemption," the Court concludes that they do not provide an independent basis for Court to exercise its federal question jurisdiction under Section 1331.

### B. *Diversity Jurisdiction*

■ The diversity jurisdiction statute, Section 1332 of Title 28 of the United States Code, provides, in pertinent part, that:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different states;
>
> . . . . .
>
> (c) For the purposes of this section and section 1441 of this title—
>
> (1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . .

28 U.S.C. § 1332 (hereinafter, "Section 1332").

"Since [Section 1332's] enactment, the courts have consistently interpreted it to require complete diversity, i.e., '[a] case falls within the federal court's 'original' diversity 'jurisdiction' . . . only if there is no plaintiff and no defendant who are citizens of the same State.'" *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir.2000)(quoting *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998))(other citations omitted).

■ "When determining a corporation's principal place of business, a court should look to the 'total activity of the company,' or the 'totality of the circumstances,' considering 'the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations.'" *Id.* (quoting *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 915 & n. 2 (10th Cir.1993)). In applying this approach, a court should "consider[ ] a variety of factors, such as the location of the corporation's nerve center, administrative offices, production facilities, employees, etc., and . . . balance[ ] these factors in light of the facts of each case." *Anschutz*, 7 F.3d at 915.

In this case, because it is undisputed that Collins is a citizen of the State of Oklahoma, the pivotal issue is the citizenship of Peak Medical. While it is also undisputed that Peak Medical is incorporated under the laws of the State of Delaware, the parties disagree as to Peak Medical's principal place of business. Although Peak Medical admits that it is the licensed operator of the Mayfair, and four other nursing facilities in Oklahoma, it contends that its principal "executive office" is located in Albuquerque, New Mexico. *See* Affidavit of Scot Sauder, Ex. C to Plaintiff's Response to Defendant's Motion to Dismiss, Dkt. # 5, p. 2, at ¶¶ 7–8. From this office, Peak Medical maintains that it provides administrative oversight and support services for the Mayfair in the following functional business areas: accounting, payroll, Medicare and Medicaid reimbursement, legal and compliance, clinical and dietary services, and information technology. *Id.* at ¶ 8. Since Peak Medical provides these services from its Albuquerque office, Peak Medical argues that its principal place of business is located in the State of New Mexico.

The Court does not find Peak Medical's argument persuasive. Although the Court acknowledges that Peak Medical does handle certain administrative functions through its "executive office" in Albuquerque, the Court finds that the bulk of Peak

Medical's operational activity necessarily occurs within the State of Oklahoma simply by virtue of the very nature of its sole business—providing complete nursing care at five facilities within the state.[1] Considering the totality of the circumstances, the Court concludes that Peak Medical's principal place of business is located within the State of Oklahoma. Therefore, in addition to being a citizen of the State of Delaware, Peak Medical is also a citizen of the State of Oklahoma. Because Collins and Peak Medical are both citizens of the State of Oklahoma, complete diversity does not exist between the parties. Accordingly, no grounds exist to support the exercise of the Court's diversity jurisdiction under Section 1332.

### C. *Conclusion*

For the reasons set forth above, the Court finds that it lacks subject matter jurisdiction over Peak Medical's Petition. The Court therefore concludes that Collins's motion to dismiss should be granted.

### IV.

IT IS, THEREFORE, ORDERED that the Defendant's Motion to Dismiss (Dkt.# 2) should be and hereby is GRANTED; the plaintiff's Petition is dismissed.

---

1. Even the very name selected by its incorporators, Peak Medical Oklahoma No. 5, Inc., reflects its operational ties to the state.