In re UNIVERSAL SERVICE FUND TELEPHONE BILLING PRAC-TICES LITIGATION.

Myhre v. AT & T, No. 02–CV–1583.

Thomas v. AT & T, No. 02–CV–4007.

Gordon v. AT & T, No. 02–CV–4032.

Risher v. AT & T, No. 02–CV–2459.

Benjamin v. Sprint, No. 02–CV–2458.

Jordan v. Sprint, No. 02–CV–5972.

Mount v. Sprint, No. 02–CV–6642.

McKown and Professional Recovery Network, Inc. v. Sprint, No. 02–CV–1052.

Nos. 02–MD–1468.

United States District Court, D. Kansas.

Dec. 19, 2002.

Isaac L. Diel, Diel & Seelman, P.C., Prairie Village, KS, for Plaintiffs.

Christopher J. Leopold, Stinson Morrison Hecker LLP, Kansas City, MO, David

P. Murray, Willkie Farr & Gallagher, Washington, DC, Julie E. Grimaldi, Mark D. Hinderks, Stinson Morrison Hecker LLP, Overland Park, KS, Mark M. Iba, Stinson Morrison Hecker LLP, Lynn S. McCreary, Bryan Cave LLP, Kansas City, MO, Mark B. Blocker, Sidley Austin Brown & Wood, Chicago, IL, for Defendants.

Patricia C. Howard, Washington, DC, Pro se.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This multidistrict litigation arises out of AT & T's and Sprint's practice of charging their customers to recoup contributions they are required to make to the Universal Service Fund ("USF") program.[1] Plaintiffs, customers of AT & T and Sprint who believe the charges to be excessive and/or believe AT & T and Sprint have misrepresented the charges, brought multiple class action and individual lawsuits against AT & T and Sprint throughout the country. Many of the lawsuits were filed in state court; however, AT & T and Sprint removed nearly all of the lawsuits to federal court under 28 U.S.C. § 1441(b), asserting federal jurisdiction.

The Judicial Panel on Multidistrict Litigation transferred the cases to this court for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. After the transfer, this court issued Practice and Procedure order No. 2, appointing plaintiffs' co-lead counsel. Plaintiffs' co-leads then filed both a first consolidated and amended class action complaint (Doc. 24) and a joint motion for remand and brief in support (Doc. 25). Certain other plaintiffs also filed motions to remand and a memorandum in support (Docs. 20, 21, 22, 29, and 88).[2] In total, plaintiffs seek to remand eight of the complaints[3] pursuant to 28 U.S.C. § 1447(c).[4] Each cause of action in each of the complaints is brought, on its face, under state statutory or common law. AT & T and Sprint, nonetheless, contend removal is proper under the "substantial federal-question" and "complete preemption" doctrines. More specifically, AT & T and Sprint argue that at least one claim in each of plaintiffs' complaints requires resolution of a substantial disputed question of federal law under the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 151, *et seq.*[5] Alternatively, AT &

---

1. The federal USF program is aimed at making telephone service available and affordable for all Americans. 47 U.S.C. § 254.

2. Plaintiffs' co-leads filed a memorandum in opposition to the unauthorized remand motions (Doc. 65) filed by certain other plaintiffs in five of the cases. After discussing these motions with the parties at a hearing, it was agreed that the circumstances of the remand motions were unique and, therefore, the court would permit the unauthorized motions. The court noted on the record that in the future unauthorized motions would not be permitted in this case.

3. Plaintiffs' co-leads seek remand in: *Jordan v. Sprint* ("Jordan"); *Myhre v. AT & T* ("Myhre"); *Thomas v. AT & T* ("Thomas"); *Gordon v. AT & T* ("Gordon"); and *Mount v.*

Sprint ("Mount"). Certain other plaintiffs seek remand in: *Gordon v. AT & T* ("Gordon"); *Mount v. Sprint* ("Mount"); *Risher v. AT & T* ("Risher"); *Benjamin v. Sprint* ("Benjamin"); and *McKown and Professional Recovery Network, Inc. v. Sprint* ("McKown").

4. Section 1447(c) provides, in pertinent part:

 A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(c). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. § 1447(c).

5. AT & T and Sprint correctly point out that if one claim in a complaint is removable, the entire case may be removed to federal court.

T and Sprint argue that the FCA completely preempts plaintiffs' state law claims.

The issues have been fully briefed, and a hearing was held on November 20, 2002. After considering the parties' arguments, the court concludes that the complaints which include a facially state law claim which is premised exclusively on the notion that AT & T's and Sprint's alleged practice of charging their customers more than they are required to remit to the USF program (plus their reasonable expenses) is wrongful in fact raise substantial disputed questions of federal law under the FCA. Accordingly, such complaints—*Benjamin, Risher,* and *McKown*—do arise under federal law and were therefore properly removed from state court. On the other hand, the complaints in which at least one theory of each claim rests on AT & T's and Sprint's alleged misrepresentations regarding their recoupment of their USF contributions, but which theory does not challenge the practice itself, do not raise substantial questions of federal law under the FCA. Moreover, such claims are not completely preempted by the FCA. Accordingly, such complaints—*Thomas, Jordan, Myhre, Gordon,* and *Mount*—do not arise under federal law and therefore should be remanded to state court.

● **Background**

Resolution of these issues requires a close reading of the FCA and of plaintiffs' complaints. The court begins then with a brief review of the relevant sections of the FCA and then will turn to the allegations of the causes of action in each of the eight complaints in question.

28 U.S.C. § 1441(c) ("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues

**A. Federal Communications Act**

The FCA regulates interstate telecommunications carriers, such as AT & T and Sprint. The USF is a part of the FCA. Congress created the USF as part of the Telecommunications Act of 1996 to support telecommunications services to rural customers, under-served markets, non-profit organizations, and other entities designated by the FCC. 47 U.S.C. § 254. Section 254 sets forth the FCC's authority to administer and implement the USF program, as well as the carriers' obligations to contribute to the USF. 47 U.S.C. § 254(a)(2), (d), (g). Under FCC regulations, Sprint and AT & T (as well as other carriers) must contribute a percentage of their gross-billed interstate and international end-user revenues to the USF. 47 C.F.R. § 54.706; *Federal–State Joint Board on Universal Service,* CC Docket No. 96–45, Report and Order, 12 FCC Rcd 8776, 9205–07 (¶¶ 842–44) (1997). Each quarter, the FCC adjusts the percentage of revenues that a carrier must contribute, the "Contribution Factor," to ensure sufficient funding for the program. 47 C.F.R. § 54.709(a); Proposed Second Quarter 2002 Universal Service Contribution Factor, 17 FCC Rcd 4451, 4451–53 (Rel. March 8, 2002). The FCC authorizes carriers to recover their USF contributions from their customers. *Federal–State Joint Board on Universal Service,* CC Docket No. 96–45, Report and Order, 12 FCC Rcd at 9209–11 (¶¶ 851–53) (1997).

As "common carriers,[6]" AT & T and Sprint are also subject to the substantive requirements of sections 201 and 202 of the FCA. 47 U.S.C. § 201 and 202. Under

therein, or, in its discretion, may remand all matters in which State law predominates.").

**6.** AT & T and Sprint, as providers of long distance telephone services, are classified as common carriers under the FCA. 47 U.S.C. § 153(h).

section 201(b), common carriers may impose only those "charges, practices, classifications, and regulations" that are "just and reasonable." 47 U.S.C. § 201(b). Under section 202(a), common carriers are prohibited from making any "unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services" and they may not give any "undue or unreasonable preference or advantage to any particular person, class of persons, or locality." 47 U.S.C. § 202(a). The FCC has recognized that these sections apply to USF charges as well as other rates and charges imposed by carriers. *See, e.g., Federal–State Joint Board on Universal Service,* CC Doc. No. 96–45, Further Notice of Proposed Rulemaking and Report and Order, 17 FCC Rcd 3752 ¶ 95 (rel. Feb. 26, 2002).[7]

Should a common carrier "omit to do any act, matter, or thing in this chapter required to be done," section 206 dictates that the "common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation ... together with a reasonable counsel or attorney's fee[.]" 47 U.S.C. § 206. Section 207 then explains how a party can pursue remedies for alleged injuries sustained under the preceding sections:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to [the FCC] ... or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.

Finally, section 414 makes clear that the federal remedy does not negate state law claims: "Nothing in this chapter contained shall in any way abridge or alter the reme-

7. Until August 1, 2001, section 203 of the FCA required long distance carriers to set forth the charges and other terms and conditions of their service in "schedules" that were filed with the FCC. 47 U.S.C. § 203(a). In a series of rulemaking orders, however, the FCC adopted rules that eliminated tariffs (referred to as "detariffing"). *Policy and Rules Concerning the Interstate, Interchange Marketplace,* CC Docket No. 96–61, Second Report and Order, 11 FCC Rcd 20,730 (1996) ("Second Report and Order"); *Policy and Rules Concerning the Interstate, Interchange Marketplace,* CC Docket No. 96–61, Order on Reconsideration, 12 FCC Rcd 15,014 (1997) ("Order on Reconsideration"); *Policy and Rules Concerning the Interstate, Interchange Marketplace,* CC Docket No. 96–61, Second Order on Reconsideration, 14 FCC Rcd 6004 (1999) ("Second Order on Reconsideration"). The FCC set August 1, 2001, as the effective date for detariffing.

> Detariffing did not change the telecommunications carriers obligation to comply with the substantive requirements of sections 201 and 202. *Order on Reconsideration,* 12 FCC Rcd at 15,057 (¶ 77). The FCC, in granting a petition by AT & T to "clarify that federal, and not state, law governs the determination as to whether a nondominant interexchange carrier's rates, terms, and conditions ... are lawful," stated:

>> We therefore agree with AT & T, Sprint, and WorldCom tha2t the Communications Act continues to govern determinations as to whether rates, terms, and conditions for interstate, domestic, interexchange services are just and reasonable, and are not unjustly or unreasonably discriminatory. While the parties only sought certification that the Communications Act governs the determination as to the lawfulness of rates, terms, and conditions, we note that the Communications Act does not govern other issues, such as contract formation and breach of contract, that arise in a detariffing environment. As stated in the *Second Report and Order,* consumers may have remedies under state consumer protection and contract laws as to issues regarding the legal relationship between the carrier and customer in a detariffed regime.

> *Order on Reconsideration,* 12 FCC Rcd at 15,057 (¶ 77).

dies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

- ● **Plaintiffs' Complaints**

- ● **California Complaints**

*Jordan, Thomas,* and *Myhre* were originally filed in California state courts. The *Jordan* and *Thomas* complaints are very similar; they both plead private attorney general actions brought on behalf of the general public.[8] In *Jordan,* the thrust of the complaint is that Sprint has represented to its customers (through billing labels, a 1–800 number, their website, and invoices) that the USF charge[9] "is required by law and will be paid over [to the government] by Sprint in its entirety to meet a governmental obligation." These representations, according to the complaint, are false, misleading, and/or likely to deceive Sprint's long distance customers because Sprint has charged its customers significantly more in USF charges than the contribution factor (and, even more than the contribution factor plus any reasonable expenses of collecting and paying its USF contributions). Thus, the USF charge is a secret profit center that allows Sprint to charge a higher-than-advertised, and higher than represented, per-minute long distance rate.[10] These misrepresentations

also prevent plaintiffs from being able to compare services and rates so that they can make an informed decision in choosing a long-distance carrier.

The complaint includes two causes of action, both alleging violations of unfair competition law under California Business & Professional Code § 17200, *et seq.* The statute defines unfair business competition as any "unlawful, unfair or fraudulent" act or practice, as well as "unfair, deceptive, untrue or misleading advertising." The first cause of action alleges that Sprint violates the California statute by advertising and representing that its USF charge solely recoups its contribution to the USF, when in fact the charge generates significant extra revenue for Sprint. As an alternative theory, plaintiffs allege that Sprint violates the statute by effectively charging its customers a higher long distance rate than it advertises. The second cause of action alleges that Sprint violates the statute by creating the false impression that it is required by law to charge the USF charge. To remedy these violations, the complaint seeks repayment of all sums collected above the contribution factor and seeks to enjoin Sprint from continuing to violate the unfair competition law in the future.

The complaint in *Thomas,* though against AT & T and not Sprint, makes similar allegations and brings the same two statutory causes of action as *Jordan.*[11]

---

**8.** Unlike the other six complaints at issue, the claims in these complaints arise prior to detariffing. That is, the claims rest on events that occurred prior to August 1, 2001.

**9.** On their bills, Sprint labels the charge a "Carrier Universal Service Charge," while AT & T labels it a "Universal Connectivity Charge." To simplify the discussion, the court will call it a USF charge.

**10.** The complaint elaborates on this point by explaining that the USF charge gives Sprint an unfair advantage in the highly competitive long distance market. Long distance carriers compete to offer the lowest per minute rates,

and hundreds of thousands of customers switch companies every year to save one or two cents per minute, often based on such carrier's advertisements. Because Sprint hides part of this basic per minute long distance charge in its USF charge, it advertises and represents that it charges a lower per-minute long distance rate than it actually charges.

**11.** The complaint does not contain the alternative theory in the first cause of action that the statute is violated by charging a higher per minute long distance rate than is advertised.

The complaint also adds a third cause of action alleging that AT & T violates the statute by representing that there is not much difference among major telecommunications carriers in the percentage charged to customers to recoup USF contributions, when in fact AT & T actually charges a significantly higher rate.

*Myhre,* a class action lawsuit, includes allegations and claims similar to those in *Thomas* and *Jordan.* But the complaint differs because it includes claims for "money had and received" and common law fraud. The money had and received claim alleges that AT & T received money which belongs to plaintiffs. According to the complaint, AT & T is therefore indebted to plaintiffs for all money charged in excess of the contribution factor. The common law fraud claim stems from allegations, similar to the allegations in the unfair competition claims, that AT & T represented that it was merely recouping its USF contribution and that AT & T represented that the charges for USF contributions were required by law.

● **New York Complaints**

*Gordon* and *Mount* include nearly identical allegations and claims. The first count is a claim that AT & T and Sprint [12] violated New York's consumer protection from deceptive acts and practices law by failing to disclose that they are charging and collecting money in excess of the contribution factor, their contribution to the USF, and/or their costs incurred in connection with their USF contributions. The second count is an "unjust enrichment money had and received—restitution" claim alleging that AT & T and Sprint stated and misrepresented that they were recouping only their contribution to the USF and/or costs of its contribution to the USF, when in fact they collected sums in excess of that amount and, therefore, they have been unjustly enriched. Finally, the third count is a breach of contract claim alleging that AT & T and Sprint breached their contracts by charging and collecting money from customers that were not authorized by the parties' agreement.

● **South Carolina Complaints**

*Benjamin* and *Risher* [13] are also very similar. The complaints rest on allegations that AT & T's and Sprint's USF charges are excessive and that they have misrepresented the charges or failed to disclose how the charges are calculated. The complaints include a claim under South Carolina's unfair trade practices act, a conversion claim, an unjust enrichment claim, a breach of duty of good faith and fair dealing claim, "a breach of contract accompanied by a fraudulent act" claim, and a declaratory judgment claim. [14]

● **Florida Complaint**

Finally, *McKown,* relying on similar allegations that AT & T's and Sprint's USF charges are excessive and that AT & T and Sprint have misrepresented the charges to their customers, includes a declaratory judgment and injunctive relief claim under Florida's deceptive and unfair trade practices act ("FDUTPA"), a deceptive conduct claim under FDUTPA, an unfair conduct claim under FDUTPA, a misrepresentation claim, a conversion claim, and an unjust enrichment claim.

**12.** In *Mount* Sprint is the defendant while in *Gordon* it is AT & T.

**13.** In *Benjamin* Sprint is the defendant while in *Risher* it is AT & T.

**14.** In addition, *Benjamin* includes a fraud and negligent misrepresentation claim.

### ● Removal Jurisdiction

 Because federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974). In the context of removal, this means that courts must strictly construe the federal removal statute. *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir.1982). Moreover, any doubts concerning whether a case is removable must be resolved in favor of remand. *Henderson v. Holmes*, 920 F.Supp. 1184, 1186 (D.Kan.1996) (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3rd Cir.1990)).

 A defendant may remove a state court action to federal court only if the case originally could have been filed in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir.2001)[15]. Where, as here, diversity jurisdiction does not exist, federal-question jurisdiction is required for removal. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425.[16] In other words, the propriety of the removal here hinges on whether the cases fall within the original federal-question jurisdiction of the federal courts. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

 The well-pleaded complaint rule governs whether there is federal-question jurisdiction. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425. This rule "provides that federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Id.* The plaintiff, therefore, is the master of his or her complaint, free to sidestep federal jurisdiction by pleading only state claims even where federal claims are also available. *Id.* Consequently, cases brought in state court may not be removed to federal court even if a federal defense, such as preemption, is anticipated in the plaintiff's complaint, and "even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. 2425.

Acknowledging that none of plaintiffs' complaints allege any federal claims on their face, AT & T and Sprint seek to invoke two independent corollaries to the well-pleaded complaint rule to support federal question jurisdiction: the "substantial federal question" and "complete preemption" doctrines.

### ● Substantial Federal Question

 While the "vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action," *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229, a case may still arise under federal law if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (noting that "[l]eading commentators have suggested that for purposes of § 1331 an action 'arises under' federal law if in order for

---

**15.** Section 1441(a) provides, in pertinent part:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

**16.** Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 47 U.S.C. § 1441(a).

the plaintiff to secure the relief sought he will be obligated to establish both the correctness and the applicability to his case of a proposition of federal law") (internal quotation marks omitted); *see also Rice v. Office of Servicemembers' Group Life Ins.,* 260 F.3d 1240, 1245 (10th Cir.2001) (explaining that a state law cause of action arises under federal law if "its resolution ... necessarily turn[s] on a substantial question of federal law, and that federal law in turn ... create[s] a private right of action"). Federal jurisdiction, then, is grounded on "the presence of a federal issue in a state-cause of action." *Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229.

■ While at first blush that characterization appears straightforward, the Supreme Court has acknowledged that applying the concept requires "principled, pragmatic distinctions" and "careful judgments about the exercise of federal judicial power." *Id.* at 813–14, 106 S.Ct. 3229.[17] Only where the "federal interest at stake" is substantial will federal jurisdiction lie. *Id.* at 814 n. 12, 106 S.Ct. 3229. In short, the Court's teachings instruct lower courts to apply the substantial federal question doctrine with caution. *See, e.g., Almond v. Capital Properties, Inc.,* 212 F.3d 20, 23 (1st Cir.2000) (noting "[p]erhaps the best one could say is that [the substantial federal question doctrine] endures in principle but should be applied with caution and various qualifications").

In *Rice,* the Tenth Circuit, in finding removal was proper under the substantial federal question doctrine, applied a three-step analysis: first, it asked whether the issues implicated were governed by federal law; second, it inquired whether the issues raised substantial questions of federal law that must be resolved; and third, it asked whether the applicable statute gave rise to a private cause of action. *Id.* at 1245.[18] Accordingly, the court will similarly seek to answer each of these questions in turn.

● **Are the Issues in Plaintiffs' State Law Claims Governed by Federal Law?**

Plaintiffs' co-leads and AT & T and Sprint differ significantly in their characterization of the gravamen of the complaints filed in this case. Plaintiffs' co-leads contend that they carefully selected the complaints in *Jordan, Thomas, Myhre, Gordon,* and *Mount* as candidates for remand because each of the complaints contains state law claims aimed solely at AT & T's and Sprint's alleged misrepresentations surrounding their practice of recouping their USF contributions. In other words, these complaints, according to plaintiffs' co-leads, include claims that do not allege that AT & T and Sprint overcharged their customers. Plaintiffs also point out that if a particular state law claim is supported by alternative theories in the complaint, *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 810, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1998) instructs that each of those theories must require resolution of a substantial disputed issue of federal law. By contrast, AT & T and Sprint assert that the true focus of

---

**17.** As the Supreme Court explained with regard to "federal question" jurisdiction: "There is no 'single, precise' definition of that concept; rather, 'the phrase arising under masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.'" *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 (quoting *Franchise Tax,* 463 U.S. at 8, 103 S.Ct. 2841).

**18.** The court did not decide whether plaintiff asserted a cause of action under federal or state law; instead, it concluded it was sufficient to find that "(1) the issues of mental capacity and undue influence are governed by federal law; (2) these issues raise substantial questions of federal law that must be resolved; and (3) the federal SGLI statute gives rise to an implied private cause of action." *Id.* at 1245.

each of these complaints, as well as the complaints in *Benjamin, Risher,* and *Mckown,* is to challenge the lawfulness of the USF charges AT & T and Sprint impose on their customers.

The parties agree, then, that there is a distinction between challenging AT & T's and Sprint's representations as opposed to the charges themselves. While each of these complaints arises out of AT & T's and Sprint's decision to recoup their USF contributions, the allegations and causes of action in the complaints are different. Only by focusing on the causes of action in each complaint will the gravamen of each well-pleaded complaint become clear.

■■■ As noted above, the two statutory unfair competition claims in *Jordan* are tied exclusively to Sprint's alleged misrepresentations. These claims do not allege that Sprint's USF charges are excessive. *Thomas* treads closer to the line by including the following paragraph which appears to allege that AT & T's USF practices are unlawful:

19. Thus, AT & T utilizes what should be, and what AT & T claims to be, a charge to recoup costs incurred through contributions to the Universal Service Fund as a secret profit center that earns AT & T hundreds of millions of dollars of illicit revenue each year. The Universal Connectivity Charge to residential long distance customers contains a significant hidden charge that does not fit into any of the categories of charges authorized by the FCC or other regula-

tory bodies; its true function is purposely concealed from regulators, the states and AT & T's customers. That true function is charging a higher-than-advertised per minute long distance rate.

Nonetheless, because the statutory unfair competition claims in *Thomas,* like *Jordan,* are tied to AT & T's alleged misrepresentations, the court concludes that *Thomas* similarly does not challenge the lawfulness of AT & T's USF practices. The critical point is that in *Thomas,* the claim itself is still based on the alleged false characterization of the charge, not on the wrongfulness of the charge itself. The quoted language may signal that the plaintiff will attempt to introduce at trial "profit center" evidence by way of explaining the character of the misrepresentations but it does not constitute a separate claim for relief absent a finding of misrepresentations.

■■■ *Thomas* and *Jordan,* therefore, include claims that rest solely on AT & T's and Sprint's misrepresentations, not allegations that the USF charges are excessive. The court agrees with plaintiffs' co-leads that reference to federal law is not necessary to determine these state law claims.[19] For example, whether AT & T and Sprint collected more in USF charges than they remitted to the USF or whether the percentage AT & T charges its customers to recoup its USF contributions is higher than other carriers are questions of fact, not questions of law.[20] Indeed, simi-

---

19. As noted above, *Thomas* and *Jordan* include claims involving the time period prior to detariffing. This does not impact the claims, however. The court rejects the argument that reference to federal law is necessary because of the federal filed rate doctrine. As explained below in the complete preemption section, these claims would not require reference to the filed tariffs.

20. Plaintiffs' co-leads acknowledge that the second cause of action in *Thomas* and *Jordan,* which alleges that AT & T and Sprint misrepresent that the USF charge is required by law, would require reference to federal law. They point out, however, that AT & T and Sprint do not deny the truth of this allegation. In fact, AT & T and Sprint's papers state that the USF charge is not required by law. Thus, this issue of law is clearly not disputed and, therefore, cannot serve as a basis for removal.

lar theories have been held not to require resolution of substantial disputed questions of federal law under the FCA. *See, e.g., Sanderson, Thompson, Ratledge, & Zimny v. AWACS, Inc.,* 958 F.Supp. 947 (D.Del.1997) (holding that claims alleging that carrier failed to accurately disclose its billing practice were not governed by FCA); *Bauchelle v. AT & T,* 989 F.Supp. 636 (D.N.J.1997) (holding that sections 201, 202 and 203 of the FCA do not apply to state law challenges to carrier's advertising and promotion practices); *In re Comcast Cellular Telecomm. Lit.,* 949 F.Supp. 1193 (E.D.Pa.1996) (holding that claims alleging that carrier failed to accurately disclose its billing practice were not governed by FCA); *Weinberg v. Sprint Corp.,* 165 F.R.D. 431 (D.N.J.1996) (holding same).

■ In other words, regardless of whether AT & T's and Sprint's charges are lawful under section 201 or 202 of the FCA, if AT & T and Sprint made representations about the USF contribution that were not true and harmed plaintiffs, then plaintiffs are entitled to recover under state law.[21] These claims, then, are merely alternative claims to section 201 or 202 claims such that they can exist concurrently with those claims.[22] Accordingly, plaintiffs, as masters of their claims, have the right to omit the potential federal claims if they choose to forego such recovery. *Schmeling v. NORDAM,* 97 F.3d 1336,

1340 (10th Cir.1996) (noting that plaintiffs are the masters of their complaints and, therefore, may choose to exclude federal claims).

■ *Myhre, Gordon,* and *Mount* present a different situation because as AT & T and Sprint point out, they include claims—*Myhre* includes a money had and received claim and *Gordon* and *Mount* include unjust enrichment claims—that could be construed as challenging the propriety of AT & T's and Sprint's USF charges. For example, the money had and received claim in *Myhre* provides:

33. Plaintiff, on behalf of himself and the Class, realleges each allegation contained in each of the paragraphs above as if set forth here verbatim.

34. As alleged above, AT & T, through its Universal Connectivity Charge, received money which, in equity and good conscience, belongs to Plaintiff and the members of the Class.

35. AT & T is, accordingly, indebted to Plaintiff and the members of the Class for all money had and received by AT & T in the amount of the Universal Connectivity Charge it collected in excess of the Contribution Factor. Plaintiff and the members of the Class request this Court to order AT & T to pay this amount to Plaintiff and the members of the Class.

---

**21.** This point illustrates the flaw in AT & T and Sprint's position that if federal law authorizes both the nature and amount of AT & T's and Sprint's USF charges, "then these and other alleged 'misstatements' are accurate and cannot form the basis of a fraud or unfair business practice claim." Regardless of whether federal law authorizes the charges, plaintiffs are alleging that AT & T and Sprint represented that they were charging only the amount needed to recoup their USF contributions. The truth of these representations hinges not on the lawfulness of the charges, but on the amount actually collected as com-

pared to the amount AT & T and Sprint represented that they collected.

**22.** Thus, AT & T and Sprint's argument that carrier disclosures are governed by section 201(b) is irrelevant. Even if this is true, AT & T and Sprint have not shown that reference to section 201(b) is required to resolve plaintiffs' state law claims. Moreover, any argument that section 201(b) would preempt plaintiffs' state law claims would not form the basis for removal. As noted above, ordinary preemption is not sufficient for removal. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425.

The complaints in *Gordon* and *Mount* seek to recover under a New York consumer protection claim, an unjust enrichment claim, and a breach of contract claim.[23] The consumer protection claim in both complaints rests exclusively on AT & T's and Sprint's alleged misrepresentations. The complaints then go on to allege:

31. Plaintiff repeats and incorporates herein by reference the allegations of paragraphs 1 through 38.

32. Defendant stated and misrepresented that its Carrier Universal Service Charge was a means of recovering its contribution to the USF and/or the costs of its contribution to the USF.

33. Defendant has collected monies from the plaintiff and the Class by means of the Carrier Universal Service Charge in excess of its contribution to the USF and/or the costs of its contribution to the USF.

34. As [a] result of defendant's collection and retention of monies in excess of its contribution to the USF and/or the costs of its contribution to the USF, defendant has been unjustly enriched.

35. Defendant has no right to retain said monies collected from plaintiff and other New York users and said monies rightfully belong to plaintiff and the Class.

36. Plaintiff and the Class are entitled to an order of restitution reimbursing them for said monies.

Even if these claims are construed as alleging that AT & T's and Sprint's USF charges are excessive, plaintiffs argue that the claims are also premised on an alternative and independent theory that it is unjust and inequitable for AT & T and Sprint to retain the USF charges they collected from plaintiffs because the charges were collected based on AT & T's and Sprint's alleged misrepresentations. The court agrees, especially in light of the fact that AT & T and Sprint do not directly address this argument, and the court must construe any uncertainties in favor of remand, *Henderson*, 920 F.Supp. at 1186.

As the above quoted language indicates, each of these claims—the money had and received claim in *Myhre* and the unjust enrichment claim in *Gordon* and *Mount*—incorporates all prior allegations of the complaint into the claims. Those prior allegations include assertions that AT & T and Sprint misrepresented their USF charges. Additionally, the claims each contain broad language that, when read in context with the prior allegations regarding the misrepresentations, can be construed to allege that it is unjust and inequitable for AT & T and Sprint to retain the USF charges they collected because they misrepresented the charges. In fact, the unjust enrichment claim in *Gordon* and *Mount* provides that AT & T and Sprint stated and misrepresented that their USF charge was a means of recovering their contribution to the USF and/or the costs of their contribution to the USF. The claim then asserts that AT & T and Sprint collected and retained sums in excess of that amount and, therefore, they have been unjustly enriched. In short, a reasonable reading of these claims is that one theory of recovery rests exclusively on AT & T's and Sprint's misrepresentations regarding their USF charges.

As noted above, these misrepresentation theories do not require reference to federal law. Thus, the court is presented with a situation where a claim is supported by alternative and independent theories, one

23. Because the breach of contract claim arises after detariffing, it does not require reference to federal law. *Order on Reconsideration*, 12 FCC Rcd at 15,057 (¶ 77) (noting that after detariffing the FCA does not govern breach of contract issues and consumers may have remedies under state law).

of which does not implicate federal law. The Supreme Court's reasoning in *Christianson* dictates that in such a situation, the claim does not "arise under" federal law. 486 U.S. at 810, 108 S.Ct. 2166.

■ In Christianson, the Court was faced with determining whether a claim was one "arising under any Act of Congress relating to patents" for purposes of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a). The Court stated explicitly that the same approach applies in determining "arising under" jurisdiction for § 1331 purposes. *Id.* at 808, 108 S.Ct. 2166; *see also* 13B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 3562 n. 68 (1995 Supp.) (discussing *Christianson*). The Court noted that the patent law issue was only essential to one of several theories under which the petitioner could prove its claim. *Id.* at 811–814, 108 S.Ct. 2166. Concluding that the case did not "arise under" federal patent law, the Supreme Court held that "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810, 108 S.Ct. 2166. Christianson, therefore, instructs that if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative and independent theory that does not establish such jurisdiction, then federal subject matter jurisdiction does not exist. *See, e.g., Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 152 (4th Cir.1994) (applying *Christianson* in deciding whether plain-

tiffs' state law claims were properly removed because the claims arose under federal law). Accordingly, it is clear that the money had and received claim in *Myhre* and the unjust enrichment claims in *Gordon* and *Mount* do not "arise under" federal law. As such, those complaints, like *Jordan* and *Thomas,* do not implicate disputed questions of federal law.

■ Finally, there is no dispute that the conversion claims in *Benjamin, Risher,* and *Mckown* allege that AT & T's and Sprint's charges, to recoup their USF contributions, are unfair, excessive, or otherwise unlawful. The court agrees with AT & T and Sprint that this issue is governed by sections 201 and 202 of the FCA.[24] *Boomer v. AT & T Corp.,* 309 F.3d 404, 420 (7th Cir.2002); *see also In re Long Distance Telecomm. Litig.,* 831 F.2d 627, 631 (6th Cir.1987) (noting that "[s]ection 201(b) speaks in terms of reasonableness, and the very charge of Count I is that the defendants engaged in unreasonable practices[;][t]his is a determination that Congress has placed squarely in the hands of the [FCC.]") (internal quotations omitted). In fact, AT & T and Sprint point out that the very issue raised by plaintiffs' complaints regarding the level of USF charges is currently before the FCC, which initiated rulemaking proceedings in February of this year to consider the issue under applicable federal law. *Federal–State Joint Bd on Univ. Serv.,* Further Notice of Proposed Rulemaking and Report and Order, 17 FCC Rcd 3752 (¶ 89–109) (rel. Feb. 26, 2002). The FCC order states unequiv-

---

**24.** The other plaintiffs' joint memorandum in support of remand argues that neither the FCA nor the FCC governs recovery of USF contributions from customers. The court cannot agree. While it is true that the FCA and FCC give carriers "flexibility to decide whether, how, and how much to recover from their customers [for their USF contributions]," *Federal–State Joint Bd. on Univ. Serv.,*

15 FCC Rcd 12,050 (¶ 11) (2000), it is clear that if carriers decide to recover their USF contributions from their customers, they must comply with sections 201 and 202 of the FCA. *Federal–State Joint Bd on Univ. Serv.,* Further Notice of Proposed Rulemaking and Report and Order, 17 FCC Rcd 3752 (¶ 89–109) (rel. Feb. 26, 2002).

ocally that recovery of universal service contributions is governed by sections 201 and 202 of the FCA. *Id.* at ¶ 89–90.[25]

In *Allison v. AT & T,* No. 02–381, slip op. at 1 (D.N.M. June 13, 2002)—one of the USF cases now pending before this court—Judge Black explained why plaintiffs' allegations that Sprint's and AT & T's USF charges are excessive requires reference to section 201(b) of the FCA.[26] *Id.* at 2–6. The court finds his reasoning persuasive and applicable here. As set out above, plaintiffs' claims allege that the USF percentages charged and collected by AT & T and Sprint are higher than the contribution factors set by the FCC and that amounts collected above those contribution factors constitute conversion. The FCC has noted that the variance between the contribution factor and the amounts charged by plaintiffs ("the mark-ups"[27]) can be explained several different ways, however.[28] As Judge Black noted, the

various explanations could include: (1) accounting for administrative costs surrounding the USF collections and contributions; (2) adjusting the percentage to account for customers who do not pay their bills; (3) declining revenues in the six-month lapse between receipt of revenues and the FCC's determination of the contribution factor; and (4) charging certain classes of customers (such as "presubscribed" customers) a higher percentage than other customers (such as prepaid calling-card customers). To recover, therefore, plaintiffs will necessarily have to prove that these explanations for the higher percentage charged are unreasonable or unjust under section 201(b). Thus, as Judge Black concluded, "to establish that recoverable overcharges occurred, Plaintiffs will necessarily become enmeshed in questions of the justness or reasonableness of the explanations Defendant offers for the variance between the contribution factors and the amounts charged Plaintiffs

**25.** Paragraphs 89 and 90 of the order provide in pertinent part:

> In considering reforms to the universal service contribution recovery process, we seek to ensure that this process is flexible, fair, and understandable for consumers, while maintaining the flexibility that providers of interstate telecommunications services may need in recovering the costs of their contributions. We also seek to ensure that telecommunications carriers' recovery practices are within the bounds of reasonableness that Congress established in sections 201 and 202.
> A statutory framework established by Congress in the [FCA] governs the recovery of universal service contributions by telecommunications service providers. Sections 201(b) and 202(a) of the [FCA] govern common carrier services and charges....

*Federal–State Joint Board on Universal Service,* CC Docket No. 96–45, Further Notice of Proposed Rulemaking and Report and Order, 17 FCC Rcd 3752 (¶ 89–90) (rel. Feb. 26, 2002).

**26.** While Judge Black preliminarily concluded that he believed removal was proper under

the substantial federal question doctrine, he did not decide the case. Instead, he stayed it to avoid inconsistent results and allow the Multidistrict Litigation Panel to determine whether the case should be transferred, along with other class action cases, to one district.

**27.** As Judge Black noted, this is a term used by the FCC for the difference between the contribution factor and the USF percentage charged to customers. The court notes that the FCC is mindful of these mark-ups, and has requested comments on several proposals to regulate the mark-ups to ensure that they are imposed without violating sections 201 or 202. *Federal State Joint Board on Universal Service,* CC Docket No. 96–45, Further Notice of Proposed Rulemaking and Report and Order, 17 FCC Rcd 3752 (¶ 92–100) (rel. Feb. 26, 2002).

**28.** The FCC reports included: *Federal–State Joint Board on Universal Service,* CC Docket No. 96–45, Further Notice of Proposed Rulemaking and Report and Order, 17 FCC Rcd 3752 (rel. Feb. 26, 2002) and *Federal–State Joint Board on Universal Service,* CC Docket No. 96–45, 16 FCC Rcd. 9892, 9895–96.

and other customers." *Id.* at 5. As such, plaintiffs' claims in *Benjamin, Risher,* and *McKown* involve disputed questions of federal law.

## B. Is the Federal Issue a Substantial Part of the State Law Claims?

 It is not enough, however, for a disputed issue of federal law simply to be a part of a state law claim. *Merrell Dow,* 478 U.S. at 813–14, 106 S.Ct. 3229. In *Merrell Dow,* the Supreme Court reaffirmed "the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813, 106 S.Ct. 3229. The question of federal law, therefore, must be substantial. *Id.*

The Supreme Court has acknowledged that there is no bright line test for determining whether a federal issue is substantial: "Far from creating some kind of automatic test, *Franchise Tax Board* thus candidly recognized the need for careful judgments about the exercise of federal judicial power." *Id.* at 814, 106 S.Ct. 3229. In *Merrell Dow,* the Supreme Court did, however, provide lower courts with several guiding principles.[29] The Court urged lower courts to consider the broad issues

of "congressional intent, judicial power, and the federal system." *Id.* at 810, 106 S.Ct. 3229. In a footnote, the Court also stressed the importance of examining "the *nature* of the federal interest at stake." *Id.* at 814 n. 12, 106 S.Ct. 3229 (emphasis in original).

Following the Court's guidance, this court concludes that *Benjamin, Risher,* and *McKown* include claims in which a substantial, disputed question of federal law is "in the forefront of the case and not collateral, peripheral or remote." *Id.* at 814 n. 11, 106 S.Ct. 3229 (citing *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 470, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting)).

As noted above, plaintiffs' claims for conversion allege, in essence, that AT & T's and Sprint's charges related to their USF contributions are excessive, unfair, or otherwise unlawful. As AT & T and Sprint correctly noted, these state law claims require proof of an unlawful act by AT & T and Sprint, and this element is only satisfied if plaintiffs can show that AT & T and Sprint violated the FCA. Put another way, an essential element of each of these state law claims is that AT & T and Sprint violated section 201 or 202 of the FCA.

---

**29.** *In Merrill Dow,* the plaintiffs brought an action in state court, alleging that the manufacturer and distributor of the drug Benedictin had negligently failed to warn consumers that the drug could cause birth defects when taken during pregnancy. *Id.* at 806, 106 S.Ct. 3229. While plaintiffs did not allege a federal cause of action, one of their six claims did rely on the Federal Food, Drug, and Cosmetic Act's ("FDCA") definition of "misbranded," 21 U.S.C. § 301 *et seq.,* to create a rebuttable presumption of the defendant's negligence. *Id.* The defendants, therefore, removed the case to federal court, arguing that the plaintiff's case was based in part on federal law. In finding that removal was improper, the Supreme Court explained that it would undermine congressional intent to permit federal-

question jurisdiction when Congress chose not to provide a federal remedy for violations of the statute that it enacted. *Id.* at 811–13, 106 S.Ct. 3229. Thus, the Court held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331). The circumstances here are clearly distinguishable from *Merrell Dow* because the parties concede that section 207 of the FCA provides plaintiffs with a federal cause of action for violations of sections 201 and 202.

·In fact, section 201 or 202 is not just an element of the state law claims; the federal statute is the cornerstone of the state law claims. That is, if AT & T and Sprint are found not to have violated section 201 or 202, the state law claims are not actionable. The state law conversion claims, then, are merely remedies for the violation of section 201 or 202. In short, these claims raise substantial questions of federal law "on which the outcome of this lawsuit turn." *Rice*, 260 F.3d at 1246 (noting that the federal issues were substantial because the outcome of the lawsuit turned on how they were resolved).

● **Does the FCA Provide a Private Cause of Action?**

■ Congress has expressed its intent for violations of section 201 and 202 of the FCA to be actionable under federal law. Section 207 provides that any person claiming to be damaged by a carrier can bring an action in federal court for those damages. Courts have applied this provision to claims involving USF charges. *See, e.g., Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 843 (9th Cir.2002) (holding section 207 provides cause of action for plaintiff's claim that carrier's USF charges violated section 202(a)). In other words, plaintiffs' claims of being overcharged with regard to AT & T's and Sprint's USF contributions, which fit within section 201(b), would be actionable under section 207. Thus, Congress has created a private cause of action under the FCA for plaintiffs' overcharge claims.[30] Accordingly, the substantial federal question doctrine supports removal, and the court denies plaintiffs' motions to remand the complaints in *Benjamin, Risher*, and *McKown.*

● **Complete Preemption**

■ Alternatively, AT & T and Sprint argue that the "complete preemption" doctrine supports removal. Under the "complete preemption" doctrine, which the Supreme Court has referred to as a corollary to the well-pleaded complaint rule, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), "the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (internal citations and quotations omitted). As the Supreme Court explained: "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.; see also Franchise Tax*, 463 U.S. at 24, 103 S.Ct. 2841 (holding that "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").[31]

30. The other plaintiffs' joint memorandum in support of remand suggests that each of these cases is much like *Fair v. Sprint Payphone Servs., Inc.*, 148 F.Supp.2d 622 (D.S.C.2001). In *Fair*, Sprint argued that the substantial federal question doctrine supported removal of plaintiffs' state law claims. *Id.* at 624. The court rejected this argument largely because federal law did not create a private cause of action. *Id.* at 625. Because federal law creates a private cause of action here, these cases are clearly distinguishable from *Fair* and other similar cases following *Merrell Dow.*

31. Much like the substantial federal question doctrine, application of the complete preemption doctrine is far from straightforward. As the Tenth Circuit noted: "Unfortunately, the scope of the doctrine is not entirely clear; '[t]he evolution of the doctrine ... has been one of fits-and-starts and zig-zags [and] has, not surprisingly, occasioned both confusion and disagreement among the federal circuit and district courts.'" *Schmeling*, 97 F.3d at 1339 (quoting *Burke v. Northwest Airlines, Inc.*, 819 F.Supp. 1352, 1356 (E.D.Mich. 1993)).

██ AT & T and Sprint argue that the FCA completely preempts each of plaintiffs' complaints. The complaints in *Myhre, Gordon,* and *Mount* are limited to the time period after detariffing and the court can easily dispense with the argument that the FCA completely preempts state law claims after detariffing. Courts universally agree that "[w]ith the demise of filed tariffs, ... complete preemption clearly no longer exists." *Wisconsin v. AT&T Corp.,* 217 F.Supp.2d 935, 938 (W.D.Wis.2002) (noting that without exception courts and the FCC have concluded as such); *see also Boomer,* 309 F.3d at 423–24 (holding, in dicta, that after detariffing the FCA does not completely preempt state law claims).

██ Whether the claims in *Thomas* and *Jordan* are completely preempted presents a more difficult issue because, as noted above, these claims are not limited to the time period after detariffing. That is, the claims relate to events that occurred prior to August 1, 2001. Relying principally on the Seventh Circuit's holding in *Cahnmann v. Sprint Corp.,* 133 F.3d 484 (7th Cir.1998), AT & T and Sprint argue that prior to detariffing the FCA completely preempted challenges to rates, terms, and conditions of interstate long distance service.[32] For purposes of this order, the court will accept this as true.[33] But even assuming that were so, the court concludes that the claims in *Jordan* and *Thomas* would not be preempted because the claims are not challenges to rates, terms, and conditions of interstate long distance service.

In *Cahnmann,* customers of a long distance carrier filed a class action lawsuit in Illinois state court alleging assorted state law breach of contract and fraud claims. *Id.* at 486–88. The plaintiffs alleged that the carrier offered one year of free long distance telephone calls on Fridays to small business customers who subscribed to the carrier. *Id.* After the plaintiffs subscribed, however, the carrier amended the applicable tariff, eliminating several countries from the "Fridays Free" program. *Id.* The plaintiffs in effect sought to have the Illinois court throw out the amended tariff because it violated the contract to provide service pursuant to the original tariff. *Id.*

Although the plaintiffs pled only state law claims in their complaint, the carrier removed the case to federal district court. *Id.* The district court allowed removal, reasoning that a suit to invalidate a filed tariff necessarily arises under federal law. *Id.* The Seventh Circuit affirmed. *Id.* The court noted that "[a] tariff filed with a federal agency is the equivalent of a federal regulation." *Id.* at 488. It then concluded that "since the federal regulation defines the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce." *Id.* at 489. Thus, "[f]ederal law

**32.** Although AT & T and Sprint do not state that their argument is limited to the time period prior to detariffing, as noted above, courts universally agree that after detariffing the FCA does not completely preempt state law claims. Thus, to the extent that AT & T and Sprint argue that *Cahnmann* would continue to be good law after detariffing, the court rejects this argument.

**33.** Because the court can decide this issue even assuming the FCA completely preempts challenges to rates, terms, and conditions of interstate long distance service prior to detariffing, the court does not reach plaintiffs' coleads' argument that the overwhelming majority of courts (according to plaintiffs approximately 21) have found that, even before detariffing, the FCA did not completely preempt state law claims. *See, e.g., Smith v. GTE Corp.,* 236 F.3d 1292 (11th Cir.2001); *Marcus v. AT&T, Corp.,* 138 F.3d 46, 54 (2d Cir.1998).

does not merely create a right; it occupies the whole field, displacing state law." *Id.*

The court, in reaching its conclusion, distinguished its facts from those in *In re Long Distance Telecommunications Litigation,* 831 F.2d 627 (6th Cir.1987). *Cahnmann,* 133 F.3d at 488. In that case, a carrier was accused of representing that its rates were lower than its competitor's without revealing that, unlike the competitor, it charged its customers for their dropped or uncompleted calls. *Id.* The case, therefore, involved "a claim of simple fraud, and its adjudication did not require determining the validity of a tariff." *Id.* Thus, the court in *Cahnmann* concluded that such a claim would not be completely preempted, but instead is the type of state law claim preserved by section 414 (the "savings provision") of the FCA. *Id.*

The claims in *Jordan* and *Thomas* are very similar to those in Long Distance Telecommunications Litigation. In each of the cases the plaintiffs' state law claims revolve around the defendants' misrepresentations, wholly apart from reference to federal law. In other words, the claims do not challenge the validity of the filed tariffs. This court is not aware of any court that has held that such claims are completely preempted by the FCA. *See, e.g., Sanderson, Thompson, Ratledge & Zimny,* 958 F.Supp. at 955–58 (holding that customer's state law claims that defendant failed to disclose its billing practices was not completely preempted by the FCA). Accordingly, the court concludes that the claims in *Jordan, Thomas, Myhre, Gordon,* and *Mount* are not completely preempted, and plaintiffs' motions to remand those complaints are granted.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' co-leads' motion to remand (Doc. 25) is granted, and the other plaintiffs' motions to remand (Docs. 20, 21, 22, 29, and 88) are granted in part and denied in part. Specifically, the other plaintiffs' motions are granted as to *Gordon* (Doc. 29) and *Mount* (Doc. 88) and denied as to *Benjamin* (Doc. 20), *Risher* (Doc. 22), and *McKown* (Doc. 21). Accordingly, *Jordan, Thomas, Myhre, Gordon,* and *Mount* are remanded to state court.